establish his claim by such proof as would justify a chancellor in reforming the deed. Equity will, in case of fraud or mistake, reform a written contract so as to make it conform to the intention of the parties: Snyder v. May, 19 Pa. 235; but the party alleging the mistake must establish it by clear, precise, and indubitable proofs: Stine v. Sherk, 1 W. & S. 195; Schettiger v. Hopple, 3 Gr. 54; Rowand v. Finney, 96 Pa. 192; Stewart's App., 98 Pa. 377; Logue's App., 104 Pa. 136; Sylvius v. Kosek, 117 Pa. 67."

Upon the former trial, the court below had given a binding instruction to find for the defendant. This we held to be error and sent the record down for another trial. We held that, under the terms of the deed, it carried the lot of an uniform width of nineteen feet five inches throughout its entire depth. It follows, that, unless upon the trial below there was sufficient evidence to reform the deed the verdict must be for the plaintiff. The court was of opinion, and so instructed the jury, that there was not evidence sufficient " to show any mistake of a mutual nature by the parties to this Breneiser deed. The deed, therefore, stands for what it appears to be on its face. We think this instruction was warranted by the testimony.

Nor do we find anything in the rejected offers of evidence which, if admitted, would have justified the reformation of this deed. It follows that the defendant's points, based upon the evidence, were properly refused.

Judgment affirmed.

---

## D. Y. SEIDERS *v.* MARY GILES ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF BERKS COUNTY.

Argued March 4, 1891—Decided March 23, 1891.
[To be reported.]

A tenant for life of real estate, entitled to and in the enjoyment of the sole and exclusive possession, has no standing to maintain an action of partition against remainder-men having a vested estate in fee subject to the life-estate.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WIL-
LIAMS, JJ.

No. 331 January Term 1891, Sup. Ct.; court below, number
and term not given.

On November 10, 1890, Daniel Y. Seiders brought an action
of partition against Mary Giles and others. The plaintiff's
declaration averred that as tenant by the curtesy he was pos-
sessed of an estate for life in a certain lot of ground in the
city of Reading, and that the defendants were together seised of
the remainder in fee-simple and refused to permit partition
thereof to be made, etc. To this declaration the defendants
filed a general demurrer.

After argument, the court, ENDLICH, J., on January 19, 1891,
filed the following opinion:

The plaintiff's declaration avers that he is tenant by the
curtesy and in exclusive possession of the whole of a certain
lot of ground in the city of Reading, the fee of which, subject
to his said life-estate, is in the defendants as tenants in com-
mon, and complains that they refuse to make partition. The
defendants demur on the ground that the declaration makes no
case for partition.

To state the plaintiff's demand is to reject it. But, as is the
case with most self-evident legal propositions, the very obvious-
ness of the conclusion renders its demonstration laborious.

The action of partition is a real action: 16 Vin. Abr., Parti-
tion, S. 16; Miller on Partition, 11; Power v. Power, 7 W.
205; and enumerated as such in the act of June 13, 1836, § 79,
P. L. 587. Moreover, it is in the nature of a possessory action;
i. e., one "intended to obtain possession, and not merely to
determine title:" Anderson's Law D., 790; "such wherein
the right of possession only, and not that of property is con-
tested:" 2 Bl. Com., 198. For, "it is settled that partition
operates merely on the lines of division, leaving the title un-
affected:" Ross v. Pleasants, 19 Pa. 157, 168; and see 5 Com.
Dig., 170, Partition, C. 15. Being a compulsory proceeding,
as distinguished from a voluntary partition: 1 Thomas's Coke,
542, it is an adversary suit: Hodgkinson's Pet., 12 Pick. 374;
Fuller v. Bradley, 23 Pick. 1, 9; Power v. Power, supra; its

purpose and effect being "to enforce the right which either of joint owners of real property has to demand a division, and that his share be set off to him in severalty:" 2 Abbot's Law D., 244, "that the owners who before enjoyed in common shall each have possession of his share in severalty:" Stevens v. Enders, 13 N. J. L. 272.

Such being the purpose and nature of the proceeding, it is manifest that it can only be employed in cases in which that purpose can be served, and which are not repugnant to its nature; i. e., only where there is a concurrent holding of property by divers persons. "The right of the plaintiffs below to recover," says KENNEDY, J., in Law v. Patterson, 1 W. & S. 184, 193, "turned entirely upon the point of their holding together with the defendant at the time the action was commenced." If, therefore, at that time, there is not a "holding together," a concurrent holding, the action cannot be maintained. Hence a plaintiff who has been ousted cannot maintain it: 1 Thomas's Coke, 543; Law v. Patterson, supra; and a plea by defendant that he is sole seised, absque hoc, etc., is good: Clapp v. Bromaghan, 9 Cow. 530; 16 Vin. Abr., Partition, Y. 5. Nor, on the other hand, can he maintain it who holds the whole of the land of which partition is prayed: Sweet v. Bussey, 7 Mass. 503; as where the demandant held one third of the real estate in fee and two thirds for life, remainder to her issue, and on default of such at her death, over to certain persons named in the will: Hodgkinson's Pet., supra; or, where the demandant was seised of one moiety in his own right, and, together with respondents as joint trustees with himself, of the other moiety in trust for a third party: Winthrop v. Minot, 9 Cush. 405. "The statute plainly implies that this process is only maintainable where the applicant has a share only:" Sweet v. Bussey, supra, 504. "A petition for partition is an adversary suit, and where there can be no adversary . . . . . a partition would be unavailing:" Hodgkinson's Pet., supra. Of course, there can be no adversary, in a question as to joint or several possession, where the plaintiff has all in his own hands.

These are elementary principles attaching to the very notion of every compulsory partition proceeding which is of common-law origin: Miller on Partition, 11. Nor, so far as they bear

Opinion of Court below.

upon the case before us, have they been destroyed or impaired by any statute ever in force in this state, to which our attention has been directed. The legislative modifications introduced have been in the line of enlarging the scope of, and simplifying the action as a remedy, not on changing its essential nature and characteristics.

Originally lying only for parceners: 1 Thomas's Coke, 544, the writ was by statute 31 Hen. VIII. c. 1, extended to tenants in common and joint tenants of estates of inheritance in their own rights or in right of their wives, and by 32 Hen. VIII. c. 32, to such persons holding limited interests only, for life or years: Ibid., note. The statute 8 & 9 Will. III. c. 31, was never in force in Pennsylvania: McKee v. Straub, 2 Binn. 1. The earliest legislation in this state assumes and recognizes the existence of the action of partition on the foundation of the common law and the statutes of Hen. VIII., and merely provides for the jurisdiction of courts and the mode of proceeding: see Miller on Partition, 18; acts of May 22, 1722, 1 Dall. 183; March 23, 1764, 4 Idem 442; April 11, 1799, 3 Sm. L. 387; March 28, 1806, 4 Sm. L. 335; April 7, 1807, 4 Sm. L. 398; March 26, 1808, P. L. 144; February 5, 1821, P. L. 24; March 29, 1824, 8 Sm. L. 287. The substantial legislative enlargements of the writ began with the act of April 11, 1835, P. L. 199, which gave it to "parties interested in real estate, . . . . . notwithstanding there may be a life-estate in part or parts of the property, with remainders over in fee; provided that all persons interested shall be made parties, and . . . . . that those in remainder shall have the right to take such part as shall be awarded to them, on giving sufficient security . . . . . for the payment of the annual interest of such part to the tenant for life, unless it shall appear to the court that such tenant for life is entitled to the exclusive possession of any part of the premises, . . . . . in which case the proceedings shall not interfere with the right of possession of such tenant without his consent, but may be had subject to such possession," etc.

In order to arrive at the real meaning of a statute, it is always necessary, as Lord Coke says, in Heyden's Case, 3 Rep. 76; 10 Rep. 73 a., to consider (1) what was the law before the act was passed; (2) what was the mischief or defect for which

Opinion of Court below.

the law had not provided; (3) what remedy the legislature has appointed; and (4) the true reason of the remedy. These points being ascertained, the presumption next applies that the legislature did not intend to make any alteration in the law beyond what it explicitly declared: Maxwell on Interp. of St., 96; Kerlin v. Bull, 1 Dall. 189, either in express words or by unmistakable implication; or, in other words, beyond the immediate scope and object of the statute : Maxwell on Interp. St., ubi supra; wherefore, it is "an established rule of construction that general words and phrases, however wide and comprehensive in their literal sense, must be construed as strictly limited to the immediate objects of the act, and as not altering the general principles of the law:" Ibid.; i. e., they are to be construed as near the use and reason of the prior law as may be, without violation of their obvious meaning: Cadbury v. Duval, 10 Pa. 265, 270; Ihmsen v. Nav. Co., 32 Pa. 153, 157; Commonwealth v. Shopp, 1 Woodw. 123, 129. The application of these principles to the statute just recited lies upon the surface.

Under the law as it theretofore existed, in order to maintain a partition proceeding it was essential that the demandant be actually or constructively in possession: Law v. Patterson, 1 W. & S. 184; Stewart v. Brown, 2 S. & R. 461. The statutes of 31 and 32 Hen. VIII. " were never intended to apply to or affect the rights of persons in remainder, but only of those, who, on a partition, would be entitled to immediate possession in severalty:" Stevens v. Enders, 13 N. J. L. 271, 275; 2 Tr. & H., § 1814, citing Brownell v. Brownell, 19 Wend. 367. This, then, was the mischief to be remedied by the enactment, —the want of any proceeding by which remainder-men could, during the continuance of the life-estate, have their shares defined in severalty. The providing of the means appropriate to this end was the immediate object of the act of 1835 and its only object. Nevertheless, it is claimed by plaintiff's counsel that the phrase " parties interested," in the clause giving authority to institute suits for partition, is, by reason of its broad generality, indicative of a plain intent to give to any person who has an interest in the real estate, no matter, so far as possession is concerned, whether jointly and concurrently with

Opinion of Court below.

another, or exclusively and in severalty, the right to compel partition among those in remainder.

Surely, nothing can be wider of the mark. The term "interested" is evidently not used in its ordinary technical sense, implying a "right of property, or in the nature of property, less than title:" Filbert v. Filbert, 9 Pa. C. C. R. 149. If it were, it would exclude the owner of a fee-simple interest: see Housekeeper's App., 49 Pa. 141, and include one who holds a lien by judgment, attachment or mortgage: Filbert v. Filbert, supra. Yet it need hardly be stated that a fee-simple tenant in common, etc., may have partition. On the other hand, it has never been supposed that a judgment or attaching creditor can, while it is settled that a mortgagee cannot: Long's App., 77 Pa. 151; any more than a cestui que trust under an active trust: Hutchison's App., 82 Pa. 509, or a widow: Mark v. Mark, 9 W. 410, neither of whom can properly be said to have no "interest." Nor can the phrase be regarded as having any particular reference to tenants for life. The legislature is presumed to know the existing state of the law: Howard Ass'n's App., 70 Pa. 344, 346: and as it then was, and had been since 32 Hen. VIII., such tenants were entitled to demand partition: Duke v. Hague, 107 Pa. 57, 68. Not being used, therefore, in any sense peculiarly applicable to life-tenants,—including them and also a great deal more,—this phrase cannot, with any show of reason, be claimed to evince an intention to enact anything distinctively limited to them as " parties interested."

Much less will it do to attribute to it the extraordinary efficacy of conferring upon a life-tenant, in exclusive possession of the whole property, the right to compel partition among the remainder-men, while the latter are debarred from making actual partition except with his consent. That no such use of the enactment was in the view of its framers is clear from its language, which, in the enacting part, refers only to life-estates in " part or parts " of the property. Indeed, there can be no manner of doubt that the phrase " parties interested " is simply used as nomen generalissimum, to cover all such classes of persons, in respect to their estates, as were, under the existing law, in a situation to become parties to a suit for partition except for the obstacle of intervening life-estates, which obstacle this

Opinion of Court below.

statute removed; i. e., all such persons as were, legally or equitably, tenants in fee-simple, for life or for a term of years, in possession or remainder, together with others as parceners, joint tenants or tenants in common. A tenant by the curtesy, therefore, of the entire property, while within the description so far as concerns the quantum of his estate: Co. Litt., 175 a, b; Miller on Partition, 37; McKee v. Straub, 2 Binn. 1; Duke v. Hague, supra, yet lacks the other essential, that of being in possession together with others, and therefore can have no standing as demandant under the act of 1835.

Two years after the passage of this act, it was decided, in Gest v. Way, 2 Wh. 445, that an action for partition would not lie, where, by the terms of the devise under which the land was held, it was uncertain whether other persons might not come in esse who would have an estate in the land which would defeat the partition. There is no reference, in this case, by court or counsel, to the act of 1835. The fact that it did not cover the case seems, therefore, to have been conceded on all sides. Thereupon followed the act of June 3, 1840, P. L. 593, enacting that "writs of partition may be sued by parties interested in real estate . . . . . notwithstanding there may be a limitation of an estate or interest in the premises, or some part thereof, to a person or persons not in existence at the issuing of the writ; provided, that the demandant has an indefeasible estate in fee-simple in the purpart claimed by him, not subject to be diminished or defeated by a subsequent event," etc. What was the single purpose of this statute, need scarcely be inquired. It was manifestly to provide for the very case, which, in Gest v. Way, supra, had been found to be a casus omissus. As to the parties who shall be entitled to the writ, in the circumstances pointed out, they are first described in the identical phrase used in the act of 1835, which, therefore, is to be regarded as having the same meaning and effect in both statutes. Statutes in pari materia are to be construed together: Neeld's Road, 1 Pa. 353; Black v. Tricker, 59 Pa. 13, 19; and words and phrases occurring in both, to be employed in the same sense: Mansell v. Railroad Co., 8 E. & B. 73; Wyman v. Fabens, 111 Mass. 77; Commonwealth v. Railroad Co., 104 Pa. 89. But the proviso restricts this meaning, in so far as the phrase relates to the demandant, by requiring that his interest

be an indefeasible estate in fee-simple, etc. In establishing
this requirement, it certainly cannot have been the intention of
the legislature to repeal all the enactments intervening between
the statute of 31 Hen. VIII. and the passage of the act of 1840,
making or recognizing the extension of the writ to tenants of
more limited estates.

To give to this proviso so sweeping an effect would be to
carry the doctrine of implied repeal to an unheard-of length.
Granting even, contrary to the principle above stated, that the
legislature of 1840 may have supposed the right to demand
partition in any case to be confined to tenants in fee-simple,
that would not make it so. "An act of parliament does not
alter the law by merely betraying an erroneous opinion of it:"
Maxwell on Interp. of St., 376, and cases there cited. More-
over, to give the proviso the force suggested would be in direct
conflict with that canon of interpretation which declares that
a proviso is to be construed (except in extraordinary cases,
every feature of which is here lacking,) with reference to the
immediately preceding parts of the clause to which it is attach-
ed, and as limiting only the passage to which it is appended:
Wilberforce on Stat. Law, 302; Spring v. Collector, 78 Ill. 101;
or, at most, only the section with which it is incorporated:
Lehigh Co. v. Meyer, 102 Pa. 479. Whilst it would, therefore,
be against reason to suppose and against principle to hold that
the legislature of 1840 intended to relegate the remedy of par-
tition back to what it was under the statute 31 Hen. VIII., c. 1,
and wipe out all the additional scope which the wisdom of inter-
vening centuries had given it, it is altogether likely that, in
extending it to cases in which the entire interest could not be
represented by parties to the action (which was expressly re-
quired by the act of 1835), because there might be a limitation
to persons not in esse at the issuance of the writ, it was deemed
proper to confine, in such cases, the right to ask for partition to
such concurrent holders of property as had an indefeasible fee-
simple estate not subject to be defeated by any subsequent
event. The requirement applied, therefore, only to proceed-
ings brought under the statute which ordained it, and in cases
falling within its especial purview. But it is to be observed,
that, again in this statute, as in that of 1835, the necessity
of the demandant and respondents having concurrent holdings

is clearly recognized. The requirement is that he have a fee-simple in the purpart claimed by him. A purpart is "that part of an estate, which, having been held in common . . . . . is by partition allotted to any" one of the parties to it: 2 Bouv. L. D., 395. The use of the word implies a common, concurrent holding, whether in possession or remainder.

The reason, however, whatever it may have been, which commended the restriction of the right to demand partition, under the act of 1840, to holders of fee-simple interests, to the legislature of that year, was rejected by that of 1842, which passed "An Act to authorize the construction of a toll bridge over the river Schuylkill, at or near Windsor Haven, in Berks county, and for other purposes." Section 9 of this act, April 5, 1842, P. L. 234, repeals so much of the act of June 3, 1840, "as declares that the defendant's estate must be in fee-simple," and enacts that "proceedings in partition, in the manner and form and with the effect in said act, may be instituted by persons having legal or equitable life-estates in any real estate." The requirement itself being limited to the cases to which the remedy was extended by the act of 1840, it necessarily follows that the repeal of that requirement has reference to none other. Nor does the succeeding affirmative declaration go any further; for it relates only to "proceedings in partition in the manner and form and with the effect in said act" of 1840. When the seventy-fifth section of the general road law of 1836 gave the remedy for the recovery of penalties incurred under the act "in the same manner" as debts of like amount are recovered under the act of March 20, 1810, the Supreme Court said that it thereby adopted the provisions of the latter statute for the form of the action and mode of procedure: Commonwealth v. Betts, 76 Pa. 465, 471. Applying that rule here, it is obvious that the proceeding in no other case can be "in the same manner" as that pointed out by the act of 1840, for the particular emergency there provided for. Much less, in any other case, can it have the "same effect." That is the very point decided in Gest v. Way, supra, and was the reason for the passage of the act of 1840. In other words, the result of the act of 1842, § 9, is simply to destroy the limitation placed by the proviso of the act of 1840 upon the phrase "parties interested," and to restore to it the meaning which it had in the act of 1835, and which has already been discussed.

Opinion of Court below.

But here again, plaintiff's counsel contends that the plain meaning of the direction that "proceedings in partition . . . . may be instituted by persons having legal or equitable life-estates in any real estate" is to destroy, as to them, the requirement of joint or concurrent possession ; to make him competent as a demandant of partition, who, by reason of his sole and exclusive possession of the whole property, has nothing to partition and no one to partition with.   To countenance this claim would be, not only to ignore the manifest and single purpose of the enactment, but to strike out of it the words qualifying that direction and limiting its application to cases under the act of 1840, as well as to do violence to the essential character, design and incidents of the proceeding known as partition.   As well might it be declared, that, since the act of 1842 gives the right to maintain partition to persons having legal or equitable life-estates in " any real estate," it is not any longer necessary that the demandant have any interest whatever in the particular property in suit, so that he be a life-tenant, legally or equitably, in *any* real estate.

In truth, the plaintiff here is not asking for partition at all, but for a sale, for his benefit, of other persons' property against their will.   Of the lot in question, he cannot get more complete or exclusive possession than he has.   But a conversion of it into money, to be placed at interest for him during life, would yield him a better revenue, and relieve him from the payment of taxes.   If a sale were, at the same time, an advantage to those interested in remainder, there would be no need for any adversary proceedings.   But the purpose of the action of partition is to divide property, not to sell it.   A sale may become an incident, but is not the objective point of it.   How utterly repugnant to the entire theory and practice of our partition system this proceeding is, is apparent from the proviso to the act of February 5, 1821, § 1, 7 Sm. L. 353, which gives the defendants the right to demand that their interests in the premises remain undivided, in which case the plaintiff's purpart alone shall be set out.   The effect of such a demand in a case like the present, supposing it to be otherwise maintainable, would be to put an end to the entire proceeding, without the opportunity or possibility of judgment of any kind.   True, the defendants have not made it in this case.   Neither were they obliged

to recognize the plaintiff's standing by making it. The very fact that a theory contended for is capable of leading to such an absurdity is decisive against it. The demurrer must be sustained.

And now, to wit, January 19, 1891, judgment is entered for defendants on the demurrer.

—Thereupon the plaintiff took this appeal, specifying that the court erred:

1. In sustaining the defendants' demurrer.

2. In the order entering judgment for the defendants on the demurrer.

*Mr. William Kerper Stevens* (with him *Mr. C. F. Evans*), for the appellant:

The only question raised by the assignments of error is that of the right of a tenant for life, entitled to the sole possession, when there are vested remainders in fee, to become the demandant in an action of partition.

1. The action of partition in Pennsylvania is statutory. The statutes 31 H. VIII., c. 1, and 32 H. VIII., c. 32, are in force here, and were substantially the law upon this subject prior to 1835. Under those statutes the action lies in cases where there are joint tenants, or tenants in common, one or some of whom have an estate for life: Duke v. Hague, 107 Pa. 57; and a tenant by the curtesy is within the reason and spirit of the statutes, although he was neither a joint tenant nor a tenant in common: Co. Litt., Thomas's ed., 544. However, it was considered doubtful, prior to the act of April 11, 1835, P. L. 199, whether a life-tenant could be the demandant in partition: Walker v. Dilworth, 2 Dall. 257.

2. But the act of 1835 and that of June 3, 1840, P. L. 593, have made marked changes in the law, and under them, in cases where life-estates are limited, partition may be had at the suit of "parties interested in real estate." These words, in their accepted legal sense, include all parties having a freehold estate: Abbott's L. Dict., 635; 2 Bl. Com., Sharsw. ed., 14, note 1; Westervelt v. People, 20 Wend. 416. This construction, being the plain and literal meaning of the words, is the proper one: Pittsburgh v. Kalchthaler, 114 Pa. 547; Brocket v. Railroad Co., 14 Pa. 243; Rich v. Keyser, 54 Pa. 89.

It would not, as has been argued, exclude the owner of a fee-simple interest, nor include a mortgagee. A mortgagee has no interest in the land until he takes possession: Myers v. White, 1 R. 353.

3. Under this construction, a tenant for life in sole possession could become the demandant, except when an estate is limited to persons not in being, in which instance the act of 1840 confined the remedy to the holder of an indefeasible estate. But, whatever construction be placed upon the acts of 1835 and 1840, the case at bar falls within the provisions of § 9, act of April 5, 1842, P. L. 234, which expressly authorize persons having legal or equitable life-estates to institute the action. The acts of 1835, 1840 and 1842, being in pari materia, form one act and must be construed together: Ehrenzeller v. Canal Co., 1 R. 181; and the act of 1835 expressly recognizes the case in which the tenant for life is entitled to the sole possession.

4. In this case, the life-tenant evidences his willingness to give up the possession to the remainder-men, not only by bringing the suit, but also by his express consent. The case exemplifies the reasons which induced the legislation referred to. The premises described in the writ consist of an unimproved but valuable building lot. The defendants refuse either to take and improve it, or to allow the plaintiff the value of such improvements as he may place thereon; and, unless the law provides a remedy, it must remain unimproved during his entire life, a burden instead of a benefit to him, and an obstruction to the growth and progress of the city. The remedy, we submit, is provided by our statutory system of partition.

*Mr. H. Willis Bland* and *Mr. W. D. Horning*, for the appellees, were not heard.

PER CURIAM:

The opinion of the learned judge of the court below contains such a thorough and exhaustive discussion of the question involved in this case that we affirm the judgment for the reasons given by him.

Judgment affirmed.