Jones, J.
 

 Besides the legal question involved in this controversy, the Court of Appeals determined two issues of fact: First, that the defendant Slater had purchased four shares of stock held by one of the original stockholders; and, second, that the two defendants named had violated the terms of the agreement, and thereby forfeited a one-half interest in the premises to plaintiffs, and awarded partition accordingly.
 

 It is claimed by plaintiffs in error that under the deed to them from the Eureka Coal Company,
 
 *23
 
 dated June, 1904, they obtained the fee-simple title to the premises and that the forfeiture clause contained in the contemporaneous agreement of that date was invalid.
 

 The defendants in error maintain the validity of the forfeiture clause, and claim the right to have partition in the undivided half of the premises forfeited to them, as tenants in common.
 

 This transaction represented by the deed and agreement is unique. The Eureka Coal Company, a corporation, the owner of the property, had 56 shares of capital stock distributed among some 19 stockholders. On the date in question the corporation deeded the premises in fee simple to Embleton and Slater. At the same time an agreement was made between the corporation and those two grantees that, for a period of not less than 20 years, and as much longer as minable coal remained unmined under the premises, coal should be kept available at the mine and sold to the stockholders named at a less price than the market. This privilege was limited to the personal use of the stockholders named, and at their death was to descend to the widow and children of the stockholder, with the right to transfer or assign the same to another.
 

 The agreement provided that if the grantees failed to perform any of the conditions named they should forfeit one-half of the granted premises, and the same should revert to the above-named stockholders, or their widows or children or assigns, in proportion to the number of shares of stock each of such stockholders had in the company, and that the stockholders should thereby
 
 *24
 
 become tenants in common with the grantees. It will be noted that while the corporation executed both deed and agreement, neither attempted to create a reversionary interest in it or its successors. For this reason it is urged by counsel for plaintiffs in error that the forfeiture clause is invalid, since the agreement caused the title, upon forfeiture, to revert, not to the grantor, but to be vested in a third party, who is a stranger; that while this was permissible under the English statute of uses, such statute is not in force in Ohio, and a legal title cannot be conveyed in that manner. That principle is sustained in
 
 Lessee of Helfenstine
 
 v.
 
 Garrard, 7
 
 Ohio, 275, pt. 1. If a use is created for the benefit of another than the grantor, it can only be enforced in equity, and under equitable principles applying to estates held in trust. As stated by White, J., in
 
 Thompson
 
 v.
 
 Thompson,
 
 17 Ohio St., 649:
 

 “Uses as legal estates have never existed in Ohio. The statute of uses not being in force here, uses have been recognized only as equities.”
 

 We are not concerned with the English rule, as we do not regard it as important in this case. Under the deed of June 6, 1904, Embleton and Slater, the grantees, undoubtedly received the legal title to the property. If thereafter such grantees were divested of such title it would be in conformity to the principles and usages of equity, upon a finding by the chancellor that the conditions subsequent had been violated, followed by a decree forfeiting the estate to the plaintiffs as provided in the agreement. But were we to assume that upon forfeiture the plaintiffs below obtained title in the
 
 *25
 
 premises, such title would rise no higher than that agreed to be forfeited to them upon violation of the condition. The agreement was made upon a condition subsequent, which provided that, if the grantees failed to perform the conditions relating to the supplying of coal, they should forfeit one-half of the premises, and the same should revert to the stockholders, their widows and children or assigns. They did not agree to forfeit the estate in controversy to the specified shareholders and tc their heirs. The covenant in the agreement ran to the person only, and words of inheritance or perpetuity usually required in the conveyance of fee-simple estates were omitted. Should the grantees violate the terms of their agreement and forfeiture ensue, a new estate would be thereby created, which, in order to make it a fee simple, necessarily required terms of perpetuity. That such requirement is necessary in ordinary conveyances has been announced by the decisions of this and other courts, and as a rule generally applied where a statute has not abrogated it.
 
 Ford
 
 v. Johnson. 41 Ohio St., 366; 10 Ruling Case Law, 649; 18 Corpus Juris, 299.
 

 It has been held in the following oases that, if the grantor makes reservations in his deed of conveyance, words of inheritance must be used in order to pass a fee-simple estate:
 
 Hall
 
 v.
 
 Hall,
 
 106 Me., 389, 76 Atl., 705;
 
 Ashcroft
 
 v.
 
 Eastern Rd. Co.,
 
 126 Mass., 196, 30 Am. Rep., 672, and
 
 Mandle
 
 v.
 
 Gharing,
 
 256 Pa., 121, 100 Atl., 535. If words of perpetuity are required in such eases, undoubtedly those terms are necessary where an estate is sought to be created by way of forfeiture upon
 
 *26
 
 the violation of a condition subsequent. If the grantees, conceding their violation, undertook to convey the forfeited half interest, a grant in conformity to their agreement without the word “heirs” would have been a sufficient compliance therewith. However, if it be urged that the plaintiffs obtained an estate for life in, the forfeited premises, with the remainder in Embleton and Slater, partition would not lie against the remaindermen since the life tenants and remaindermen have no unity of possession and are not tenants in common within the terms of Section 12026, General Code, which compels tenants in common and coparceners to suffer partition. That the remainderman cannot have partition, where a life estate intervenes, has been decided in. the following cases:
 
 Tabler
 
 v.
 
 Wiseman, 2
 
 Ohio St., 208, and
 
 Eberle
 
 v.
 
 Gaier, Jr.,
 
 89 Ohio St., 118, 105 N. E., 282. It has also been held that unless authorized by statute a life tenant cannot have partition against his remainderman.
 
 Love
 
 v.
 
 Blauw,
 
 61 Kan., 496, 59 Pac., 1059, 48 L. R. A., 257, 78 Am. St. Rep., 334;
 
 Seiders
 
 v.
 
 Giles,
 
 141 Pa., 93, 21 Atl., 514;
 
 McConnell
 
 v.
 
 Bell,
 
 121 Tenn., 198, 114 S. W., 203, 130 Am. St. Rep., 770, and
 
 Smith
 
 v.
 
 Runnels,
 
 97 Iowa, 55, 65 N. W., 1002. Whether partition among the life tenants themselves is authorized by the Ohio partition statutes need not here be determined, because the courts below awarded partition of the fee between the life tenants and the remaindermen as tenants in common. This was done upon the theory that, after the decree of forfeiture, they became owners of the undivided one-half interest in the premises equally with the remaindermen.
 

 
 *27
 
 We are therefore of the opinion that the stockholder life tenants cannot compel partition of the interest held by the remaindermen.
 

 However, there is one feature in this case which compels our attention, although it seems not to have been considered by the courts below. The suit was filed as a statutory partition, but was actually tried as a case in equity, wherein partition was decreed. We come now to a consideration whether in view of the situation disclosed by the deed and agreement of June 6, 1904, a forfeiture should have been decreed by the court. This phase of the case is important, since it has been determined that partition is not available to the plaintiffs, and for the further reason that by the contemporaneous agreement the parties themselves have stipulated for the performance of conditions which were in part the consideration for the conveyance. The main purpose of the contemporaneous agreement was the engagement whereby the grantees agreed that coal should be kept available at the mine continually, and sold to the stockholders at a small sum per bushel less than the market price. Here was a provision whereby the promisees had a certain and adequate remedy for damages in case the promisors violated the stipulation. The parties agreed upon a penalty or forfeiture, under which the grantees agreed to forfeit one-half of the premises to the stockholders. There is no question but that this provision of the agreement was a forfeiture, and it is so denominated.- It appears, therefore, that here was a forfeiture clause penalizing the grantees for failing to perform a collateral agreement, capable of pe
 
 *28
 
 cuniary compensation fixed in the agreement. The price fixed was certain, viz., one cent and one-half cent per bushel less than the market price for lump and slack coal respectively. It has often been stated that forfeitures are odious. Whether a court of equity will enforce a forfeiture depends in a large measure upon the peculiar circumstances of each case. It will not lend its aid to enforce a forfeiture for the breach of a condition subsequent, where the forfeiture attempts to secure the performance of a principal obligation payable by a definite sum readily compensable in an action at law. Especially is this true where the forfeiture seems disproportionate to the injury caused by such breach. In this case we are of the opinion that the record develops a large number of circumstances which would require a court of equity to relegate the parties to an action at law rather than enforce the forfeiture. This agreement was entered into June 6, 1904. Upon this branch of the case there was not a great deal of testimony offered, but there is testimony tending to prove that this peddling mine had been operated from time to time, through various lettings to lessees, from 1904 to 1920, that the grantees had considerable difficulty in obtaining lessees to operate this little property, and that there were several who attempted it during the period named. The answer of the grantees states that it was impossible to mine and keep coal available for the sale to stockholders without great loss to themselves. This feature of the case is only alluded to for the purpose of calling attention to the claim of the grantees that their failure to keep a supplv of
 
 *29
 
 coal available was not such a willful act on their part as would require the drastic remedy of forfeiture. This contract provided that the agreement to keep coal available at the mine was to be for a period of “not less than twenty years and as much longer as any minable coal of said Pittsburgh vein remains unmined under said premises.”
 

 It is not necessary, nor is it our purpose in this case, to measure the rights of the parties under this collateral provision at this time, but it is suggested that any court of equity would hesitate to enforce a forfeiture should it appear that the covenants had been substantially complied with between the time when the agreement was made and the time when the action was filed.
 

 “The general principle now adopted is, that wherever a penalty is inserted merely to secure the performance or enjoyment of a collateral object, the latter is considered as the principal intent of the instrument, and the penalty is deemed only as accessory, and therefore as intended only to secure the due performance thereof or the damage really incurred by the nonperformance. * * * If it is to secure the performance of some collateral act or undertaking, then courts of equity will retain the bill and will direct an issue of
 
 quantum damnificatus. * *
 
 * In reason, in conscience, in natural equity, there is no ground to say, because a man has stipulated for a penalty in case of his omission to do a particular act (the real object of the parties .being the performance of the act), that if he omits to do the act he shall suffer an enormous loss wholly disproportionate to the injury to the other party. If it be said that
 
 *30
 
 it is his own folly to have made such a stipulation, it may equally well be said that the folly of one man cannot authorize gross oppression on the other side.” 3 Story on Equity Jurisprudence, Sections 1726 and 1728.
 

 “A court of equity does not lend its aid to divest an estate for the breach of a condition subsequent.”
 
 Livingston
 
 v.
 
 Tompkins,
 
 4 Johns. Ch. (N. Y.), 415, 8 Am. Dec., 598.
 

 This court is therefore of the opinion that under the facts disclosed it would be inequitable to enforce the forfeiture provision found in the agreement, and that it should relegate the parties to their legal remedies specifically provided therein. Since the provision in the contract, whereby the grantees were to keep coal available at the mine to be sold to the stockholders at less than the market price, was made by the corporation for the benefit of its shareholders, the latter could maintain a suit thereunder.
 
 Bagaley & Co.
 
 v.
 
 Waters, 7
 
 Ohio St., 360, 367, and
 
 Emmitt
 
 v.
 
 Brophy,
 
 42 Ohio St., 82.
 

 For the reasons stated, the judgment of the Court of Appeals is reversed.
 

 Judgment reversed.
 

 Marshall, C. J., Robinson, Matthias, Day and Allen, JJ., concur.
 

 Wanamaker, J., not participating.