[Cite as *Peppertree Farms, L.L.C. v. Thonen*, 2020-Ohio-3042.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| PEPPERTREE FARMS, LLC, ET AL | : | **JUDGES:** |
|  | : | Hon. William B.Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiffs-Appellees | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2019CA00159 |
| JOY ANN THONEN, ET AL | : |  |
|  | : |  |
| Defendants-Appellants | : | OPINION |

CHARACTER OF PROCEEDING: Civil appeal from the Stark County Court of Common Pleas, Case No. 2017CV01826

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: May 19, 2020

APPEARANCES:

For-Appellants

ERIK A. SCHRAMM, JR.
Hanlon, Estadt, McCormick
  & Schramm, Co., L.P.A
46457 National Road West
St. Clairsville, OH 43950

For-Appellees

GREG WATTS
Krugliak, Wilkins, Griffiths &
Dougherty Co., LPA
4775 Munson Street, NW
P.O. Box 36963
Canton, Ohio 44735

*Gwin, J.,*

{¶1} Appellants appeal the March 11, 2019 and September 25, 2019 judgment entries of the Stark County Court of Common Pleas granting summary judgment to appellees.

### Facts & Procedural History

{¶2} This case arose from disputed ownership of mineral rights related to approximately 78.668 acres of real property in Adams Township in Monroe County, Ohio, owned by appellee Peppertree Farms and approximately 5.009 acres of real property in Adams Township in Monroe County, Ohio, owned by appellees Jay and Amy Moore.

{¶3} On September 22, 1920, Mary Fleahman executed a warranty deed to H.J. Jones. The deed was recorded on April 26, 1921. The deed contained the following reservation, "the 1/4 of oil Royalty and one half of the gas is hereby reserved and is not made part of this transfer * * *." This is the "Mary Fleahman Interest." Subsequently, Mary Fleahman executed a deed to W.T. Fleahman transferring 3/4 of her interest in the Mary Fleahman Interest. The deed was recorded on October 5, 1929. Mary Fleahman died on August 22, 1936. Appellants Richard Reinholtz ("Reinholtz") and Sylvia Ann Miller ("Miller") are the owners of a portion of the Mary Fleahman Interest.

{¶4} On April 15, 1916, W.T. Fleahman executed a warranty deed to W.A. Gillespie. The deed was recorded on January 22, 1917. The deed contained the following reservation, "excepts and reserves one-half of the royalty of the oil and gas under the above described real estate." Subsequently, W.T. Fleahman executed a deed to S.E. Headley, the surface owner of the real estate, transferring, "the one fourth (1/4) part of his royalty of all oil and gas." The deed was recorded on October 11, 1929. The

interest reserved by W.T. Fleahman, plus the interest W.T. Fleahman received from Mary Fleahman during his lifetime, and minus the interest W.T. Fleahman conveyed to S.E. Headley is the "W.T. Fleahman Interest."  W.T. Fleahman died on February 22, 1934.

{¶5}    The Estate of W.T. Fleahman executed a deed recorded on January 8, 1938, purporting to transfer W.T. Fleahman's interest in the W.T. Fleahman Interest to T.J. Kremer, Jr.  Subsequently, T.J. Kremer, Jr. transferred one-half of his interest to T.J. Kremer in a quit-claim deed recorded August 19, 1948.  The interest transferred to T.J. Kremer is the "T.J. Kremer Interest."  Appellant KOAG, Inc. is the owner of the T.J. Kremer Interest.

{¶6}    On February 15, 1921, H.J. Jones executed a warranty deed to James Foughty.  The deed was recorded on April 26, 1921.  The deed contained the following reservation, "all the oil and gas underlying the above described premises is hereby reserved," unto H.J. Jones and "is not made a part of this transfer."  This is the "Jones Interest."  However, H.J. Jones did transfer to the surface owner one-half of the lease bonus money, stating, "the Grantor of this deed is to have the privilege of leasing and operating for said oil & gas and Bonus money received from said leasing to be equally divided between Grantor and Grantee."  Subsequently, H.J. Jones executed an assignment to S.E. Headley on September 17, 1921, transferring "one half part of this one fourth royalty of all the oil and gas."

{¶7}    Peppertree acquired title to the Peppertree property via a warranty deed from Gary W. Pepper and Cathie Pepper dated July 14, 2012 and recorded in the Monroe County Recorder's office on July 24, 2012.  In 2013, Peppertree entered into an oil and gas lease with Gulfport Energy.

{¶8}     Jay Moore obtained title to the surface of the Moore Property in a deed from Joseph and Katie Long on June 24, 2013.  On July 31, 2013, Jay Moore entered into an oil and gas lease with Eclipse Resources, I, LP, with a memorandum of lease filed for record on August 20, 2013.  On August 15, 2015, Jay Moore conveyed the Moore Property to both himself and Amy Moore via a survivorship deed.  Jay and Amy Moore extended their oil and gas lease with Eclipse Resources.  The lease extension was filed on July 28, 2018.

{¶9}     Peppertree filed a two-count quiet title complaint on September 7, 2017 against approximately one hundred defendants.  In the first count, Peppertree avers it is entitled to a judicial declaration that the reserved interests were limited to the lifetimes of Mary Fleahman, W.T. Fleahman, and H.J. Jones, the reserving parties, as the reserving language in each interest failed to include words of inheritance.  Peppertree requests the trial court quiet title to the oil and gas, including the reserved interests underlying the real estate, and determine that Peppertree is the sole owner of the oil and gas, including the reserved interests underlying the real estate, and that appellants have no right, title, or interest in the oil and gas, including the reserved interests, underlying the real estate.

{¶10}   In the second count, Peppertree avers that nothing in Peppertree's chain of title after the root of title repeats or specifically refers to the recording information for the reservations and no preserving notices concerning the reservations were filed between September 5, 1957 and July 24, 2012, the date the deed to Peppertree was recorded. Peppertree requests the trial court quiet title to the oil and gas, including the reserved interests underlying the real estate, and determine that Peppertree is the sole owner of

the oil and gas, including the reserved interests, and that appellants have no right, title, or interest in the oil and gas.

{¶11} The Jones Defendants filed a motion to dismiss on November 1, 2017. On November 6, 2017, the Kremer Defendants filed a motion to dismiss. The trial court denied the motions to dismiss on September 13, 2018. Multiple defendants filed counterclaims against Peppertree. The parties stipulated that appellant KOAG, Inc. is the party-in-interest to the T.J. Kremer Interest.

{¶12} In October of 2018, the Jones Defendants filed a motion to add Jay and Amy Moore as plaintiffs in this action because they own the surface of the other portion of property encumbered by the H.J. Jones original oil and gas reservation. The trial court granted the motion in November of 2018. In December of 2018, the Jones Defendants filed counterclaims against Jay and Amy Moore. KOAG also filed a similar counterclaim against Jay and Amy Moore, and in January of 2019, Defendant Sylvia Miller filed a counterclaim against Jay and Amy Moore.

{¶13} Peppertree filed a motion for summary judgment on January 18, 2019, against several defendants, including the Jones Defendants, Reinholtz, Miller, and KOAG. Peppertree argued they were entitled to summary judgment: on Count One of their complaint holding that all severed interests are terminated and expired because each was considered a life estate, as each was created prior to the enactment of Ohio General Code Section 8510-1 and because each failed to include language indicating it would pass to the owners' heirs; on Count Two of their complaint because the Mary Fleahman Interest, the W.T. Fleahman Interest, and the Jones Interest were extinguished, as a matter of law, under the Marketable Title Act ("MTA"); and Peppertree

is entitled to summary judgment on all of the counterclaims because they rely on the continued validity and existence of the severed interests and because those interests are no longer valid and effective.

{¶14} Defendants KOAG, Reinholtz, and Miller filed a motion for summary judgment on January 24, 2019, arguing: the W.T. Fleahman and the Mary Fleahman Interest were not limited to life estates that terminated upon the deaths of W.T. Fleahman and Mary Fleahman; Peppertree's MTA claim fails as a matter of law due to the applicability of the DMA; and, even if the MTA applies, title transactions bar appellees' MTA claim.

{¶15} On January 25, 2019, KOAG, Reinholtz, and Miller filed a motion for default against Jay and Amy Moore. On January 28, 2019, Jay and Amy Moore filed a pro se answer with the trial court. In the pro se answer, Amy and Jay Moore state they "do not agree with this counterclaim" as they "bought minerals separate from [sic] house. All these people coming after our five acres is crazy they have sold and abandoned the rights to our property they have not reserved the minerals or paid our taxes on our property. Therefore we Jay and Amy Moore disagree with this counterclaim." On March 26, 2019, the trial court denied the motion for default against Jay and Amy Moore.

{¶16} Each party filed extensive responses and replies to the motions for summary judgment with regards to the Peppertree Property.

{¶17} The trial court issued a judgment entry on March 11, 2019. First, the trial court agreed with Peppertree that the severed interests are limited to the lifetime of the reserving parties and granted summary judgment to Peppertree as to Count One, holding that all of the severed interests are terminated and expired because each was considered,

as a matter of law, a life estate. The trial court cited several Ohio Supreme Court cases in support of its decision and found that the severed interests created severed oil and gas interests, royalties, or in-place minerals, meaning there needed to be words of inheritance within each in order to avoid the life estate limitation and, because no such language exists, each interest must be treated as a now-terminated life estate.

{¶18} Specifically as to the Mary Fleahman Interest and W.T. Fleahman Interest, the trial court found the oil and gas royalty rights associated with those interests did not exist as separate legal estates and each of these interests created new, separately-recognized estates, severed oil and gas royalty, that were reserved out of the estate conveyed. Thus, the Mary Fleahman Interest and the W.T. Fleahman Interest created life estates for those reserved oil and gas royalty rights because each failed to insert any words of inheritance. Additionally, because the T.J. Kremer Interest was based on the W.T. Fleahman Interest, it was a life estate tied directly to the W.T. Fleahman Interest, which was a life estate. The trial court additionally found that since the W.T. Fleahman Interest, the Mary Fleahman Interest, and the T.J. Kremer Interest were personal property interests associated with the lands conveyed therein, they are subject to the requirement of using words of inheritance.

{¶19} With regards to the Jones Interest, the trial court found in the 1921 deed, H.J. Jones created a new, separately-recognized estate, a severed oil and gas estate, that required words of inheritance in order for it to be more than a life estate and no such language was placed within that reservation. Further, the Jones Interest explicitly states the mineral rights were "hereby reserved" and such a reservation requires words of inheritance, and without such, only a life estate was created.

{¶20} As to Count Two of Peppertree's complaint, the trial court found the Mary Fleahman Interest, the W.T. Fleahman Interest, and the Jones Interest were extinguished by the MTA. The trial court noted that the "root of title" in this case, as the term is used in the MTA, is a deed recorded on September 5, 1957, as the deed made no mention of the Mary Fleahman Interest, the W.T. Fleahman Interest, or the Jones Interest. After this root of title, the real estate was transferred several times until coming into the possession and ownership of Peppertree in 2012. These instruments do not make any reference to the Mary Fleahman Interest, the W.T. Fleahman Interest, or the Jones Interest. Further, the trial court determined that the interests were not subject to any exception under the MTA, nor subject to a preserving event during the relevant review period and thus the interests were irrevocably extinguished in 2012 when Peppertree acquired the real estate. The trial court granted Peppertree's motion for summary judgment as to Count Two and found the Mary Fleahman Interest, the W.T. Fleahman Interest, and the Jones Interest were extinguished by the MTA and Peppertree thus owns the real estate free and clear of those interests.

{¶21} The trial court then granted summary judgment to Peppertree on each of the counterclaims because each of the counterclaims is premised on the severed interests actually being valid and effective. Since the severed interests are no longer effective, as a matter of law, the defendants cannot claim to own them or own any interest in the real estate. The trial court additionally found that Peppertree was entitled to summary judgment on Reinholtz's slander of title counterclaim because it is time-barred.

{¶22} On April 17, 2019, KOAG, Reinholtz, and Miller filed a motion for summary judgment against Jay and Amy Moore. Jay and Amy Moore filed a motion for summary

judgment against KOAG, Reinholtz, Miller, and the Jones Defendants on April 19, 2019. The parties filed responses and replies to the motions for summary judgment.

{¶23} The trial court issued a judgment entry on September 25, 2019 as to the Moore Property, noting that the defendants' claims against Jay and Amy Moore were essentially the same as those against Peppertree Farms. The trial court adopted and restated the facts as outlined in the March 11, 2019 judgment entry, as the severed interests are applicable to both the Moore Property and the Peppertree Property. The trial court noted it is undisputed that the severed interests include mineral reservations that affect the real estate of both Peppertree Farms and the Moore property.

{¶24} The trial court first found that Jay and Amy Moore properly filed an answer that had already been accepted as part of the court's record. Next, the trial court found the severed interests are limited to the lifetime of the reserving parties and the Mary Fleahman Interest, the W.T. Fleahman Interest, and the Jones Interest were extinguished by the MTA, and it is undisputed that the "root of title" of Jay and Amy Moore is identical to that of Peppertree Farms. The trial court thus found Jay and Amy Moore were entitled to summary judgment for the same reasons as articulated in the March 11, 2019 judgment entry.

{¶25} The trial court further found the Moores are entitled to summary judgment on all of the defendants' counterclaims because they are all premised on the continued existence and validity of the severed interests. Further, the trial court granted Jay and Amy Moore summary judgment on the KOAG, Reinholtz, and Miller defendants' slander of title counterclaims because they are time-barred. Finally, the trial court dismissed the Jones Defendants' cross-claim against the Mary Fleahman Defendants.

{¶26} Appellants KOAG, Inc., Reinholtz, and Miller appeal the March 11, 2019 and September 25, 2019 judgment entries of the Stark County Court of Common Pleas and assign the following as error:

{¶27} "I. THE TRIAL COURT ERRED IN DETERMINING THE SEVERED INTERESTS WERE LIMITED TO THE LIFETIME OF THE RESERVING PARTIES.

{¶28} "II. THE TRIAL COURT ERRED IN DETERMINING THE MARY FLEAHMAN INTEREST, W.T. FLEAHMAN INTEREST, AND THE JONES INTEREST WERE EXTINGUISHED BY THE OHIO MARKETABLE TILTE ACT (R.C. 5301.47 ET SEQ.).

{¶29} "III. THE TRIAL COURT ERRED IN DETERMINING THE FACTUAL AND LEGAL AVERMENTS IN THE DEFENDANTS' COUNTERCLAIMS AGAINST PLAINTIFFS JAY MOORE AND AMY MOORE WERE NOT DEEMED ADMITTED."

*Summary Judgment Standard*

{¶30} Civ.R. 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party

against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶31} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶32} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶33} 133, 204 N.E.2d 100 (4th Dist. Athens 1964).

I.

{¶34} In their first assignment of error, appellants argue the trial court erred in determining the Mary Fleahman Interest, the W.T. Fleahman Interest, and the T.J. Kremer Interest were limited to the lifetime of the reserving parties. Appellants contend that words

of inheritance were not necessary to create a fee simple interest in the oil and gas, as evidenced by the language used in the deeds. Specifically, appellants argue the language "excepts and reserves" in the W.T. Fleahman deed and the phrase "is not made a part of this transfer" in the Mary Fleahman deed demonstrate the interests are not newly-created interests, but were interests already in existence when the deeds were executed and recorded.

{¶35} In 1925, the enactment of Ohio General Code Section 8510-1 (now R.C. 5301.02) eliminated the need for words of inheritance or perpetuity in conveyances. However, when real property estates were conveyed or reserved prior to March 25, 1925, words of inheritance or perpetuity, such as "to [Grantor's] heirs and assigns forever," were required to show that an owner's interest was not limited to his life alone, otherwise only a life estate was conveyed or reserved. *Embleton v. McMechen*, 110 Ohio St. 18, 143 N.E. 177 (1924); *Gill v. Fletcher*, 74 Ohio St. 295, 78 N.E. 433 (1906). If the language in the deed constituted an "exception," words of inheritance were not necessary for the grantor to retain an interest that the grantor could convey to future owners, because the grantor retained a portion of his former estate. *Id.* However, if the language in the deed was a "reservation" prior to March 25, 1925, words of inheritance were necessary because the reservation created a new property interest. *Id.*

{¶36} In 1906, the Ohio Supreme Court held that "whether the language used in a deed creates a reservation or exception from the grant depends upon the intention of the parties as evinced by a construction of the whole instrument in light of the circumstances of each case." *Gill v. Fletcher*, 74 Ohio St. 295, 78 N.E. 433 (1906). In that case, the grantor specifically stated the interest to be retained by the grantor was

"only excepted" from the grant. *Id.* The Court stated the parties meant something in using that language and it cannot be overlooked or thrown out of the instrument. *Id.*

{¶37} Subsequently, in *Embleton v. McMechen*, the Ohio Supreme Court further clarified the issue and specifically held that the requirement to use words of inheritance applied to fee simple estates, not just rights-of-way or easements. 110 Ohio St. 18, 143 N.E. 177 (1924). The deed in that case provided that if the grantees failed to perform the conditions in the deed, the grantees would forfeit one-half of the premises back to the grantor shareholders and the interest in the premises obtained by the grantors would have been a life estate only with the grantees having the remainderman interest because "they did not agree to forfeit the estate in controversy to the specified shareholder and to their heirs." *Id.* The Court continued, "the covenant in the agreement ran to the person only and words of inheritance or perpetuity usually required in the conveyance of fee-simple estates were omitted." *Id.* The premises, or the physical land, existed before and after the conveyance or forfeiture, and was not determinative of whether words of inheritance were necessary. *Id.* Rather, the focus was on whether the thing being reserved was conveyed back out of the original grant rather than never conveyed at all. *Id.*

{¶38} More recently, the Ohio Supreme Court stated, "the owner who conveys the surface estate may retain an interest in the mineral estate by reservation * * * a severed mineral estate is considered to include those rights to use of the surface as are reasonably necessary for the proper working of the mine and the obtaining of the minerals." *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185 (2015). This language indicates that, when minerals are severed from the surface estate, two new and separate estates are created – the surface estate and the mineral

estate -- and, unless the reservation provides otherwise, the new mineral estate-owner acquires rights in the surface of the land granted, including the right to access the surface estate for the purpose of producing the severed mineral interest.

{¶39} We find the caselaw cited by appellants to be distinguishable from the instant case.  In *Bosky*, this Court limited its holding to the deed language and specific surrounding circumstances of that case, in which the instrument did not state access to the railroad crossing was limited, the railroad was in use for more than one hundred years with the easement to cross being utilized, and the fact that, without the easement to cross the railroad, the subject property would be legally landlocked.  *Bosky Group, LLC v. Columbus & Ohio River Railroad Co.*, 5th Dist. Muskingum No. CT2017-0027 2017-Ohio-8292.  Additionally, in the *Sloan* case, the reserving language was in the instrument's granting clause.  *Sloan v. Lawrence Furniture Co.*, 29 Ohio St. 568, 1876 WL 129 (December 1876).  However, in this case, the language creating the interests were not in the granting clause of the instruments.

{¶40} In this case, the Mary Fleahman deed reservation contains the following language, "is hereby reserved and is not made part of this transfer."  The W.T. Fleahman deed states it, "excepts and reserves one-half of the royalty of the oil and gas under the described real estate."  We agree with the trial court that, based upon the Supreme Court's holdings in *Embleton*, *Gill*, and *Buell*, the language used in the instruments and surrounding circumstances creates reservations.  Both reservations explicitly indicate the grantors were reserving interests unto themselves, not merely excepting them from the grant.  The Mary Fleahman Interest and the W.T. Fleahman Interest created new, severed oil and gas interests.  The T.J. Kremer Interest is directly tied to the W.T. Fleahman

Interest, as it was expressly carved out of the W.T. Fleahman Interest. Accordingly, because there are no words of inheritance within either the Mary Fleahman Interest or the W.T. Fleahman Interest, the interests must be treated as life estates that terminated upon the death of the grantors. The trial court thus did not commit error in holding Peppertree and Jay and Amy Moore own the real estate free and clear of the Mary Fleahman and W.T. Fleahman Interests.

{¶41} Appellants' first assignment of error is overruled.

II.

*MTA and DMA*

{¶42} In their second assignment of error, appellants contend the trial court erred in determining the Mary Fleahman Interest, the W.T. Fleahman Interest, and the T.J. Kremer Interest were extinguished by the MTA.

{¶43} The General Assembly enacted the MTA in order to extinguish interests and claims in land that existed prior to the root of title. *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.2d 1089. The purpose of the MTA is to simplify and facilitate "land title transactions by allowing persons to rely on a record chain of title." *Id.* The MTA provides that marketable record title, an unbroken chain of title to an interest in land for 40 years or more, "shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title." R.C. 5301.50; R.C. 5301.48. A marketable record title is defined as "a title of record * * * which operates to extinguish such interests and claims, existing prior to the effective date of the root of title * * *." R.C.

5301.47(A).  Additionally, the MTA states the Act "shall be liberally construed to effect the legislative purpose of simplifying the facilitating land title transactions * * *."  R.C. 5301.55.

{¶44}  Appellants argue the DMA applies over the MTA to the abandonment of oil and gas mineral estates because the DMA is a more specific statute than the MTA and because the terms of the MTA conflict with the specific provisions of the DMA.  We disagree with appellants.  First, we find that the DMA and MTA do not conflict.  While the MTA provides for extinguishment after 40 years resulting in a null and void interest, the DMA provides for an abandonment process.  These are two separate and distinct statutory claims with different tests; thus, they do not conflict.  *Richmond Mills, Inc. v. Gerraro*, 7th Dist. Jefferson No. 18 JE 0015, 2019-Ohio-5249; *Datkuliak v. Wheeler*, 7th Dist. Monroe No. 18 MO 0003, 2019-Ohio-4091 (holding an oil and gas interest is subject to both the MTA and DMA); *West v. Bode*, 7th Dist. Monroe No. 18 MO 0017, 2019-Ohio-4092, appeal allowed, 157 Ohio St.3d 1535, 2020-Ohio-122, 137 N.E.3d 1196.  Further, even if the MTA and DMA do conflict, we find they are not irreconcilable, because effect can be given to both the DMA and the MTA.  *Senterra, Ltd. v. Winland*, 7th Dist. Belmont No. 18 BE 0051, 2019-Ohio-4387. If a general provision conflicts with a special provision, they shall be construed, if possible, so that effect is given to both, unless the conflict is irreconcilable. R.C. 1.51; *Dillon v. Farmers Inc. of Columbus, Inc.*, 145 Ohio St.3d 133, 2015-Ohio-5407, 47 N.E.3d 794.  In *Erickson v. Morrison*, this Court recently applied the MTA and found the severed interest at issue was extinguished by the operation of the MTA and thus was no longer valid.  5th Dist. Guernsey No. 19CA18, 2019-Ohio-5430.

{¶45} Additionally, reading together the most recent Ohio Supreme Court decisions, we find there is no conflict in applying both the DMA and MTA to mineral

interests. In *Corban*, the Ohio Supreme Court held the 2006 DMA applies prospectively to all claims that mineral rights have been abandoned that are asserted after the DMA's effective date. *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.2d 1089. Though the Court was answering a specific question about abandonment under the DMA, a majority of the justices found the statutory methods of abandonment and extinguishment to be distinct. *Id.*; *Richmond Mills, Inc. v. Gerraro*, 7th Dist. Jefferson No. 18 JE 0015, 2019-Ohio-5249. In *Blackstone v. Moore*, the Ohio Supreme Court applied the MTA and held that an oil and gas royalty right in real property was properly preserved and not extinguished under the MTA. 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132. In analyzing whether the reference was sufficient to preserve the interest under the MTA, the Ohio Supreme Court contrasted the language in the MTA and DMA, and found that while the legislature specifically said in the DMA that the notice must include the volume and page number of the deed or instrument where the interest was created, the MTA does not. *Id.*

{¶46} Accordingly, we find the trial court did not commit error in holding a mineral interest can be extinguished under the MTA. Like in *Erickson*, this case deals with extinguishment, not abandonment; thus, the MTA applies in this case.

*Application of the MTA*

{¶47} Appellants also argue that, even if the MTA applies, the trial court committed error in finding their interests extinguished by the MTA because there are title transactions occurring after the root of title.

{¶48} The MTA acts as a 40-year statute of limitations for bringing claims against a title of record. *Erickson v. Morrison*, 5th Dist. Guernsey No. 19CA18, 2019-Ohio-5430.

The MTA extinguishes oil and gas rights by operation of law after 40 years from the effective date of the root of title unless a saving event preserving the interest appeared in the record chain of title, i.e., the interest was specifically identified in the muniments of title in a subsequent title transaction, the holder recorded a notice claiming the interest, or the interest arose out of a title transaction which has been recorded subsequent to the effective date of the root of title. R.C. 5301.48; *Erickson v. Morrison*, 5th Dist. Guernsey No. 19CA18, 2019-Ohio-5430.

**{¶49}** Marketable record title is a "title of record * * * which operates to extinguish such interests and claims, existing prior to the effective date of the root of title." R.C. 5301.47(A). The starting point to determine whether a person has record marketable title is finding the root of title for each interest claimed. *Senterra Ltd. v.* Windland, 7th Dist. Belmont No. 18 BE 0051, 2019-Ohio-4387. In this case, appellants and appellees agree that the root of title for each interest claimed is a deed recorded on September 5, 1957. Unless an exception set out in R.C. 5301.49 applies in this case, appellants' interests are null and void pursuant to R.C. 5301.50. Appellants claim the exception set out in R.C. 5301.49(D) applies in this case. Pursuant to R.C. 5301.49(D), record marketable title is subject to:

> any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started; provided that such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of section 5301.50 of the Revised Code.

{¶50} The recording of a title transaction under R.C. 5301.49(D) and R.C. 5301.47 is equivalent to the filing of the notice of claim during the forty-year period in the MTA. *Heifner v. Bradford*, 4 Ohio St.3d 49, 446 N.E.2d 440 (1983).

{¶51} Appellants assert their interests were the subject of title transactions within the 40-year period of appellees' root of title. Appellants contend these title transactions are as follows: (1) a certificate of transfer of Eloise Kremer to Hortense Arthur, Edna Kremer, T.J. Kremer, Ruth Gillespie, Eloise Decker, Margaret King, William Kremer, Alice Edmonds, George Kremer, and John Kremer, filed for record on September 4, 1981 conveying "all oil and gas leases, all oil and gas royalty interests, all oil and gas leasehold interests, and all other oil and gas working interests, leasing rights, known and unknown, of which Eloise Kremer seized * * *"; (2) a quit claim deed from Hortense Arthur, T.J. Kremer, Ruth Gillespie, Eloise Decker, Margaret King, William Kremer, Alice Edmonds, and George Kremer to KOAG, Inc. on October 4, 1981, conveying "all oil and gas leases, all oil and gas royalty interests, all oil and gas leasehold interests, and all other oil and gas working interests, leasing rights, known and unknown, of which Eloise Kremer seized; (3) an affidavit of facts relating to real property dated March 29, 2017; (4) an affidavit of claim to preserve a mineral interest dated May 14, 2018; (5) the last will and testament of Rose Neuhard filed on February 4, 1969 in West Virginia in which she devised "the entire residue of my estate," including her portion of the Mary Fleahman Interest, to Robert W.W. Phillips and Gilbert Bachmann, as trustees in trust for the benefit of George Neuhard, Jr., Sylvia Neuhard, and Dixie Neuhard; and (6) the will of Dixie Neuhard on September 29, 1998, devising her estate, including her portion of the Mary Fleahman Interest, to her husband, Reinholtz.

{¶52} We first note that the first and second title transactions that appellants list are transactions passing the T.J. Kremer Interest. However, appellees are not claiming the MTA extinguished the T.J. Kremer Interest. Since the first and second transactions do not involve the Mary Fleahman Interest or the W.T. Fleahman Interest, we find they are not exceptions to the MTA pursuant to 5301.49(D).

{¶53} As to the third and fourth title transactions, we find these are not exceptions to the MTA pursuant to R.C. 5301.49(D) because they occurred in 2017 and 2018, after the Mary Fleahman Interest and the W.T. Fleahman Interest were extinguished and thus these transactions could not revive the interests. After the root of title is identified, the next step is to "examine the recordings 40 years succeeding the title transaction to see if there is anything in the record purporting to divest the person of the claimed interest." *Senterra Ltd. v. Windland*, 7th Dist. Belmont No. 18 BE 0051, 2019-Ohio-4387. The parties agree the root of title deed in this case was recorded on September 5, 1957. Thus, the forty-year period expired on September 5, 1997. Any action taken after the applicable period cannot revive an already extinguished interest. R.C. 5301.49(D).

{¶54} Appellants finally contend their portion of the Mary Fleahman Interest was acquired through the will of Rose Neuhard and the will of Dixie Neuhard. A title transaction is defined as "any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrator's, or sheriff's deed, or decree of any court, as well as warranty deed, quit claim deed or mortgage." R.C. 5301.47(F). "Record" is defined as including "probate and other official public records, as well as records in the office of the recorder of the county

in which all or part of the land is situated." R.C. 5301.47(B). "Recording" when applied to the official public records of the probate or other court, includes filing. R.C. 5301. 47(C).

{¶55} We agree with appellees that the wills of Rose Neuhard and Dixie Neuhard do not constitute exceptions to the MTA pursuant to R.C. 5301.49(D). The will of Dixie Neuhard was not recorded or filed with any probate court, as evidenced by the affidavit attached to appellants' motion for summary judgment ("A true and accurate copy of the Last Will and Testament of Dixie Lee Neuhard is attached hereto as 'Exhibit O'"). R.C. 5301.49(D) specifically requires the title transaction to have "been recorded subsequent to the effective date of the root of title." Additionally, unlike the case cited by appellants in support of their argument in which there was an ancillary administration of the testator's estate in Belmont County, the county in which all or part of the land was situated pursuant to R.C. 5301.47(B), the will of Rose Neuhard was not recorded, filed, or administered partially or fully in Ohio, but was filed and administered fully in West Virginia. See *Warner v. Palmer*, 7th Dist. Belmont No. 18 BE 0012, 2019-Ohio-4078.

{¶56} Accordingly, we find the trial court did not commit error in applying the MTA and in finding the Mary Fleahman Interest and W.T. Fleahman Interest were extinguished pursuant to the application of the MTA. Appellants' second assignment of error is overruled.

III.

{¶57} In their third assignment of error, appellants argue the trial court erred as a matter of law in holding Jay and Amy Moore were not deemed to have admitted the factual and legal averments in appellants' counterclaims. Appellants contend the answer filed by Jay and Amy Moore was not timely filed and did not deny the specific averments

contained in their counterclaims; thus, the averments in the counterclaims were deemed admitted and summary judgment should have been granted in appellants' favor.

{¶58} We disagree with appellants. We first note that appellants never moved to strike the answer of Jay and Amy Moore as being untimely, either before or after the trial court denied appellants' motion for default judgment. Further, Civil Rule 8(D), entitled "Effect of failure to deny," provides that, "averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." However, Civil Rule 8(D) must be read in conjunction with the remaining sections of Civil Rule 8. Civil Rule 8(B) provides that a party "shall admit or deny the averments upon which the adverse party relies," and states the pleader has the option of making specific denials, or "the pleader may do so by general denial subject to the obligations set forth in Civ.R. 11." Civil Rule 8(F) states, "all pleadings shall be so construed as to do substantial justice."

{¶59} Appellants filed counterclaims against Jay and Amy Moore seeking a declaratory judgment that the Moore lease with Eclipse Resources was void ab initio. Appellants also included a claim for quiet title, seeking a declaration that Jay and Amy Moore had no right or interest in the T.J. Kremer Interest, the Mary Fleahman Interest, or the W.T. Fleahman Interest. Appellants lastly included a counterclaim for slander of title due to the filing of the lease with Eclipse Resources.

{¶60} In this case, we find the answer by Jay and Amy Moore is sufficient to comply with Civil Rule 8 and we concur with the trial court that the answer of Jay and Amy Moore constitutes a denial of the allegations in appellants' counterclaims. See *Karras v. Karras*, 2nd Dist. Montgomery No. 27606, 2018-Ohio-515. In their answer, both Jay and

Amy Moore stated that they owned the minerals, appellants sold and/or abandoned their rights to the real estate, appellants did not reserve the minerals or pay property taxes, and that they disagreed with appellants' counterclaims.  Thus, the answer was appropriately considered by the trial court in determining the motions for summary judgment.  Appellants' third assignment of error is overruled.

{¶61}  Based on the foregoing, appellants' assignments of error are overruled.

{¶62}  The March 11, 2019 and September 25, 2019 judgment entries of the Stark County Court of Common Pleas are affirmed.


By Gwin, J., and

Delaney, J., concur;

Hoffman, P.J., concurs

separately

*Hoffman, P.J., concurring*

{¶63} I concur in the majority's analysis and disposition of Appellants' second and third assignments of error. I further concur in its analysis and disposition of Appellants' first assignment of error with respect to the W.T. Fleahman Interest.

{¶64} I respectfully dissent from the majority's conclusion the Mary Fleahman Interest was a "reservation" rather than an "exception." I find the language in the deed that the oil and gas royalty(s) "is reserved and is not made part of this transfer," constitutes an "exception" and therefore did not require words of inheritance to preserve it.

{¶65} However, I concur in the majority's decision to affirm the trial court's decision as the MTA provides an independent basis to support its decision under the two-issue rule.