**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Peppertree Farms, L.L.C. v. Thonen*, **Slip Opinion No. 2022-Ohio-396.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an
advance sheet of the Ohio Official Reports. Readers are requested to
promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65
South Front Street, Columbus, Ohio 43215, of any typographical or other
formal errors in the opinion, in order that corrections may be made before
the opinion is published.

SLIP OPINION NO. 2022-OHIO-396

PEPPERTREE FARMS, L.L.C., ET AL., APPELLEES, *v.* THONEN ET AL.,

APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it
may be cited as *Peppertree Farms, L.L.C. v. Thonen*, Slip Opinion No.
2022-Ohio-396.]**

*Property law—Conveyance of oil and gas interests—Dormant Mineral Act, R.C.*
*5301.56—Marketable Title Act, R.C. 5301.47 et seq.—Recorded title*
*transactions—Under common law applicable to quiet-title action,*
*conveyance of real property had to include words of inheritance for grantor*
*to pass on, or to retain part of, a fee-simple absolute interest in the land—*
*If conveyance did not include words of inheritance, then grantee received,*
*or grantor retained, only a life estate in the land—Marketable Title Act and*
*Dormant Mineral Act provide independent, alternative statutory*
*mechanisms that may be used to reunite severed mineral interests with the*
*surface property subject to those interests—A will that does not distribute*
*the decedent's oil and gas rights does not affect title and is not a recorded*

*title transaction that prevents those rights from being extinguished by the Marketable Title Act—Court of appeals' judgment affirmed.*

(No. 2020-0814—Submitted October 6, 2021—Decided February 15, 2022.)

APPEAL from the Court of Appeals for Stark County,

No. 2019CA00161, 2020-Ohio-3043.

————————————

**KENNEDY, J.**

{¶ 1} This discretionary appeal from a judgment of the Fifth District Court of Appeals presents three issues. First, we consider whether Ohio's Dormant Mineral Act, R.C. 5301.56, supersedes Ohio's Marketable Title Act, R.C. 5301.47 et seq., and provides the exclusive mechanism for reuniting a surface estate with its severed mineral interest. Second, we address whether a deed in which the grantor retained an interest in the oil and gas rights to the property kept only a life estate in that interest because the deed did not include language stating that the grantor's interest was inheritable. And third, we consider whether the recording of a decedent's will that does not distribute the decedent's oil and gas rights is sufficient to prevent those rights from being extinguished by the Marketable Title Act.

{¶ 2} The first issue is controlled by this court's recent decision in *West v. Bode*, 162 Ohio St.3d 293, 2020-Ohio-5473, 165 N.E.3d 298, ¶ 2. The *West* court held that the Dormant Mineral Act and the Marketable Title Act provide alternative, independent mechanisms to reunite a surface estate with its severed mineral interest.

{¶ 3} Our resolution of the second issue is informed by our decision in *Peppertree Farms v. Thonen*, ___ Ohio St.3d ___, 2022-Ohio-395, ___ N.E.3d ___ ("*Peppertree Farms I*"), which we also decide today. In that case, we recognized that prior to the General Assembly's abrogation of the common-law rule in 1925, the common law distinguished between a reservation of a property interest in a conveyance and an exception to a conveyance of property. *Id.* at ¶ 2. Because a

2

reservation created a new property right for the grantor that had not already been owned by the grantor in fee simple absolute before the conveyance, words of inheritance were required for the grantor to retain more than a life estate in the interest. *Id.* In contrast, when the grantor withheld an existing fee-simple property right from the conveyance, the deed contained an exception. *Id.* And because the grantor had already held more than a life estate in the property, words of inheritance were not necessary to make the excepted property inheritable. *Id.*

{¶ 4} The Fifth District concluded that the oil and gas interest at issue in this case was created by a reservation and that in the absence of words of inheritance, it was a life estate that had expired. 2020-Ohio-3043, ¶ 42. We disagree. The oil and gas interest was in existence and owned in fee simple by the grantor at the time of the conveyance, and the grantor excepted the oil and gas interest from the transaction. Words of inheritance were not necessary to create a right of inheritance that already belonged to the grantor.

{¶ 5} The third issue requires us to apply the Marketable Title Act, which provides that an unbroken chain of title to land for a period of 40 years establishes marketable record title to the land and generally extinguishes property interests that predate the landowner's root of title. R.C. 5301.47(A) and 5301.48. However, marketable record title is subject to any interest arising out of a title transaction that was recorded within 40 years after the effective date of the root of title, R.C. 5301.49(D), and a "title transaction" includes transactions that affect title to an interest in land by will or inheritance, R.C. 5301.47(F).

{¶ 6} The court of appeals correctly held that a recorded will that does not affect title to an interest in land is not a recorded title transaction under R.C. 5301.47(F) and cannot be an exception to the Marketable Title Act under R.C. 5301.49. 2020-Ohio-3043, at ¶ 56-57. A will that distributes the decedent's oil and gas rights affects title to an interest in land. And when oil and gas rights pass through intestacy, a title transaction also occurs. But in this case, the recorded will

did not transfer, encumber, or otherwise affect title to the oil and gas rights, and the inheritance of those rights was not recorded and does not appear in the chain of title. For these reasons, neither the recording of the will nor the inheritance is a recorded title transaction preventing the oil and gas rights from being extinguished by the Marketable Title Act.

{¶ 7} We therefore affirm the judgment of the Fifth District.

**Facts and Procedural History**

{¶ 8} In April 1916, W.T. and Katherine Fleahman conveyed two tracts of land in Monroe County to W.A. Gillespie. The first tract contained approximately 80 acres and the second tract contained approximately 5 acres. The deed stated, "Grantor W.T. Fleahman excepts and reserves from this deed the one half of the royalty of the oil and gas under the above described real estate."

{¶ 9} Although the transfer is not documented in the record before this court, it is not disputed that Mary Fleahman acquired W.A. Gillespie's interest through a subsequent conveyance. In a deed executed in September 1920 and recorded in April 1921, Mary Fleahman conveyed the two tracts of land to H.J. Jones. The deed stated that "the 3/4 of oil Royalty and one half of the gas is hereby reserved and is not made a part of this transfer." In February 1921, Jones conveyed the property to James Foughty. The deed, which was recorded in April 1921, included the following language: "All the oil and gas underlying the above described premises is hereby reserved and is not made a part of this transfer." In September 1921, Jones conveyed "the one half part of his one fourth royalty of all the oil and gas" to S.E. Headley. What remained with Jones is called the "Jones Interest."

{¶ 10} Jones died intestate in January 1932. Earl S. Ward, the administrator of his estate, sold the Jones Interest to Beatrice J. Pfalzgraf and Irene Jones in August 1936. In March 1943, Pfalzgraf conveyed her one-half share of the Jones Interest to Ward. Ward died testate in March 1972, and his handwritten will was

filed in the Monroe County probate court in April 1972. Because the will did not include a specific devise that disposed of his share of the Jones Interest and did not contain a residuary clause, the Jones Interest passed to Ward's heirs as if he had died intestate. *See* R.C. 2105.06. In August 2017, Stacey L. Lucas recorded an "Affidavit of Claim to Preserve a Mineral Interest" for the Jones Interest.

{¶ 11} Appellee Peppertree Farms, L.L.C., owns 78.668 acres of the land that was previously owned by Jones. Appellees Jay and Amy Moore own an additional 5.009 acres of the land that was previously owned by Jones.

{¶ 12} Peppertree Farms brought this action to quiet title in the Stark County Common Pleas Court against numerous potential claimants to the oil and gas under its property, including appellants, Cheryl Bilby, Dwight Sowle, Kris Pfalzgraf, Karigan Bea Pfalzgraf, Kansas Lee Pfalzgraf, Shirley M. Pfalzgraf, Stacey L. Lucas, Jeremy Stimpert, Angie Pfalzgraf Stimpert, Jennifer Stimpert Burkhart, Donna Sims, Aaron Lucas, Robbie Lucas, Roger William Erwin, and Brian Matthew Erwin, who refer to themselves collectively as "the Jones Defendants," as we do herein. Relevant here, Peppertree Farms sought a declaration that the Jones Interest was only a life estate that terminated on Jones's death. It also requested a declaration that the Jones Defendants' interests were extinguished by the Marketable Title Act. Jay and Amy Moore were added as plaintiffs. The Jones Defendants brought counterclaims against Jay and Amy Moore to quiet title in the Jones Defendants' favor and for a declaratory judgment that the Jones Interest had not expired or been abandoned.

{¶ 13} The trial court entered summary judgment in favor of Peppertree Farms and Jay and Amy Moore, determining that the Jones Interest was a reservation that retained only a life estate because the deed did not include words of inheritance. It also determined that the Dormant Mineral Act did not supersede the Marketable Title Act and that the Jones Interest would have been extinguished by the Marketable Title Act if it were not a life estate.

5

**{¶ 14}** The Fifth District affirmed, agreeing with the trial court that the Jones Interest created new property rights and was therefore a reservation by which Jones had retained only a life estate because the conveyance did not include words of inheritance. 2020-Ohio-3043, at ¶ 42. The court of appeals held that the Dormant Mineral Act did not supersede the Marketable Title Act, *id.* at ¶ 47-48, and that Ward's will was not a recorded title transaction that would have prevented the Jones Defendants' interest from being extinguished by the Marketable Title Act, *id.* at ¶ 57-58.

**{¶ 15}** We accepted the Jones Defendants' discretionary appeal to review three propositions of law:

1. The Dormant Mineral Act, R.C. 5301.56, is the specific provision of the Marketable Title Act, R.C. 5301.47 et seq., with respect to the transfer of severed oil and gas interests to a surface owner and its provisions prevail over the general provisions which are inapplicable.

2. A grantor's severance of an oil and gas interest in an instrument conveying real property merely retains the grantor's preexisting interest in the land.

3. The filing of a severed mineral interest owner's will in the probate court where the property is situated constitutes a title transaction under the Marketable Title Act even if the will does not specifically devise the interest or contain a residuary clause because the plain language of R.C. 5301.47(F), broadly defines title transaction as "any transaction affecting title to any interest in land, including title by will or descent."

*See* 160 Ohio St.3d 1407, 2020-Ohio-4574, 153 N.E.3d 105; 160 Ohio St.3d 1462, 2020-Ohio-5332, 157 N.E.3d 798.

{¶ 16} Because this court's decision in *West*, 162 Ohio St.3d 293, 2020-Ohio-5473, 165 N.E.3d 298, at ¶ 2, resolves the Jones Defendants' first proposition of law, we address only the issues presented in proposition of law Nos. 2 and 3.

**Law and Analysis**

*The Jones Interest*

{¶ 17} Before the General Assembly abrogated the common-law rule in 1925, a grantor could convey a fee-simple absolute interest in real property only by including words of inheritance in the deed. *See Peppertree Farms I*, ___ Ohio St.3d ___, 2022-Ohio-395, ___ N.E.3d ___, at ¶ 2; *see also* G.C. 8510-1, 86 Ohio Laws 18 (1925). Otherwise, the grantee received a life estate that reverted to the grantor upon the grantee's death. *Peppertree Farms I* at ¶ 2.

{¶ 18} Additional considerations arose when the grantor sought to retain an interest in the property being conveyed. As we explained in *Peppertree Farms I*,

> [t]he common-law courts * * * recognized a distinction between a reservation of a property interest and an exception to the conveyance of property. A reservation created a new property right for the grantor, and because that new interest had not been owned by the grantor in fee simple absolute before the conveyance, words of inheritance were required to make it inheritable. In contrast, an exception to the conveyance withheld from the transfer an existing fee-simple property right owned by the grantor. Because property owned in fee simple absolute was already inheritable, the grantor did not have to include words of inheritance to retain more than a life estate in the excepted interest.

*Id.* at ¶ 2.

**{¶ 19}** In *Peppertree Farms I*, we addressed the deed by which Mary Fleahman conveyed the two parcels of land to Jones. The deed stated that "the 3/4 of oil Royalty and one half of the gas is hereby reserved and is not made a part of this transfer." *Id.* at ¶ 24. We determined that this language excepted her oil and gas interest from the conveyance, because at the time of the transaction she owned an interest in the oil and gas in fee simple. *Id.* That is, because that interest was already inheritable, words of inheritance were not required to retain more than a life estate in it. We also rejected the notion that the exception clause's use of the word "royalty" made a difference. First, we noted that deeds sometimes referred to the mineral interest itself as a "royalty," *id.* at ¶ 25, citing 1 Kuntz, *A Treatise on the Law of Oil and Gas*, Section 15.4 (2021), and second, we recognized that the present right to a future royalty is real property and that such an interest was owned by Mary Fleahman at the time of the conveyance, *id.* at ¶ 27, citing 3 Kuntz, *A Treatise on the Law of Oil and Gas*, Section 38.2.

**{¶ 20}** Similar to the exception in the deed transferring the property from Mary Fleahman to Jones, the deed transferring the property from Jones to Doughty stated that "[a]ll the oil and gas underlying the above described premises is hereby reserved and *is not made a part of this transfer*." (Emphasis added.) Nonetheless, Peppertree Farms and Jay and Amy Moore contend that this conveyance created something new—a severed mineral interest with "new fractional ownership of lease bonus royalties."

**{¶ 21}** However, we noted in *Peppertree Farms I* that an owner " 'may alienate [the] incidents or property rights [of the mineral estate] in whole or in part [brackets added],' " *id.*, ___ Ohio St.3d ___, 2022-Ohio-395, ___ N.E.3d ___, at ¶ 27, quoting 1 Kuntz, *A Treatise on the Law of Oil and Gas*, Section 15.1, including by severing a present interest in future royalties, *id.* The right to bonus payments is also one of the incidents of ownership of a mineral interest. 1 Kuntz,

*A Treatise on the Law of Oil and Gas*, Section 15.1. Professor Eugene Kuntz, the author of a renowned treatise on the law of oil and gas, has explained that "[c]onsistent with the situation where there has been an alienation of other incidents of the full mineral ownership, it would follow that it is possible to create a 'bonus interest' which may or may not be coupled with a power to lease." *Id*. at Section 15.5.

**{¶ 22}** Jones excepted his oil and gas interest from the conveyance of the surface estate. The oil and gas and his interest in it existed at the time of the transaction, and he owned that interest in fee simple with rights of inheritance. Therefore, because the conveyance did not create a new property right that reverted back from the grantee, words of inheritance were not necessary for Jones to retain more than a life estate in the share of the oil and gas that he owned.

**{¶ 23}** For these reasons, the Jones Interest did not expire at the time of Jones's death in 1932. Therefore, we turn to the court of appeals' alternative holding that the Jones Interest was extinguished by the Marketable Title Act.

*The Marketable Title Act*

**{¶ 24}** In 1961, the General Assembly enacted the Marketable Title Act, R.C. 5301.47 et seq., to extinguish interests and claims in land that existed prior to the root of title, with "the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title," R.C. 5301.55. This legislation provides that marketable record title—which is an unbroken chain of title to an interest in land for 40 years or more, R.C. 5301.48— "shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title," R.C. 5301.50. Marketable record title therefore "operates to extinguish" all other prior interests. R.C. 5301.47(A).

**{¶ 25}** However, "[s]uch record marketable title shall be subject to * * * [a]ny interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started." R.C. 5301.49(D). " 'Title transaction' means any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrator's, or sheriff's deed, or decree of any court, as well as warranty deed, quit claim deed, or mortgage." R.C. 5301.47(F).

**{¶ 26}** The will at issue in this case is not a recorded title transaction under R.C. 5301.49(D). The will did not contain a specific devise of the Jones Interest, nor did it include a residuary clause distributing the remainder of Ward's property to a beneficiary. Therefore, although it was recorded after the effective date of the root of title, it did not transfer, encumber, or in any way affect title to the Jones Interest. In contrast, the transfer of the Jones Interest to Ward's heirs through intestate succession *did* affect title to an interest in land and was a title transaction. But this title transaction was not *recorded* within 40 years of the effective date of title. For these reasons, neither Ward's recorded will nor the unrecorded transfer of the Jones Interest through intestacy is a recorded title transaction or a saving event preventing that interest from being extinguished by the Marketable Title Act. *See Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, ¶ 39 ("Because a delay rental payment does not affect title to any interest in land, occurs outside the record chain of title, and is not filed or recorded in the office of the county recorder, it is neither a title transaction nor a saving event").

**{¶ 27}** The Jones Defendants provide no other argument explaining why their interests were not extinguished by the Marketable Title Act. The court of appeals correctly affirmed the summary judgments entered in favor of Peppertree Farms and Jay and Amy Moore.

10

**Conclusion**

{¶ 28} Prior to March 25, 1925, when a conveyance created new property rights benefiting the grantor in the transaction, it contained a reservation and words of inheritance were required to make those new rights inheritable. In contrast, when the transaction withheld preexisting, inheritable property rights from the conveyance, it contained an exception to the conveyance and words of inheritance were not required to retain more than a life estate in the excepted property interest.

{¶ 29} Jones retained his interest in the oil and gas underlying the property by excepting it from the conveyance of the surface estate. He owned that interest in fee simple and it was already inheritable before Jones conveyed the surface estate. The trial court and the appellate court therefore incorrectly concluded that the Jones Interest was a life estate that expired upon Jones's death in 1932.

{¶ 30} Nonetheless, the lower courts correctly determined that a recorded will that does not distribute the decedent's oil and gas rights does not affect title and is not a recorded title transaction that prevents those rights from being extinguished by the Marketable Title Act. For these reasons, the court of appeals correctly affirmed the summary judgments entered in favor of Peppertree Farms and Jay and Amy Moore and against the Jones Defendants.

{¶ 31} We therefore affirm the judgment of the Fifth District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and DEWINE and STEWART, JJ., concur.

DONNELLY, J., dissents, with an opinion joined by FISCHER and BRUNNER, JJ.

_____

**DONNELLY, J., dissenting.**

{¶ 32} This case should be dismissed as having been improvidently allowed. It does not involve issues of "public or great general interest." Article

IV, Section 2(B)(2)(e), Ohio Constitution. It is highly fact-specific and the issues involved were resolved below. I dissent.

FISCHER and BRUNNER, JJ., concur in the foregoing opinion.

_____

Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Matthew W. Onest, and Wayne A. Boyer, for appellees.

Roetzel & Andress, L.P.A., Emily K. Anglewicz, David J. Wigham, and Sara E. Fanning, for appellants.

Emens, Wolper, Jacobs & Jasin Law Firm Co., L.P.A., Cody Smith, and Sean E. Jacobs, urging affirmance for amici curiae, Gregory A. Goble and Brenda S. Goble.

_____