[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Peppertree Farms, L.L.C. v. Thonen*, Slip Opinion No. 2022-Ohio-395.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-395

PEPPERTREE FARMS, L.L.C., ET AL., APPELLEES, *v.* THONEN ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Peppertree Farms, L.L.C. v. Thonen*, Slip Opinion No. 2022-Ohio-395.]

*Property law—Conveyance of oil and gas interests—Dormant Mineral Act, R.C. 5301.56—Marketable Title Act, R.C. 5301.47 et seq.—Under common law applicable to quiet-title action, conveyance of real property had to include words of inheritance for grantor to pass on, or to retain part of, a fee-simple absolute interest in the land—If conveyance did not include words of inheritance, then grantee received, or grantor retained, only a life estate in the land—Marketable Title Act and Dormant Mineral Act provide independent, alternative statutory mechanisms that may be used to reunite severed mineral interests with the surface property subject to those interests—Court of appeals' judgment affirmed in part and reversed in part, and cause remanded to the trial court.*

(No. 2020-0812—Submitted October 6, 2021—Decided February 15, 2022.)

APPEAL from the Court of Appeals for Stark County,

No. 2019CA00159, 2020-Ohio-3042.

————————————

**KENNEDY, J.**

{¶ 1} This discretionary appeal from a judgment of the Fifth District Court of Appeals presents two issues. The first issue is whether a provision in a deed in which a grantor retained an interest in the oil and gas rights to a property kept only a life estate in that interest because the provision did not include language stating that the grantor's interest was inheritable. The second issue is whether Ohio's Dormant Mineral Act, R.C. 5301.56, supersedes Ohio's Marketable Title Act, R.C. 5301.47 et seq., and provides the exclusive mechanism for reuniting a surface estate with its severed mineral interest.

{¶ 2} Before the General Assembly abrogated the common-law rule in 1925, a conveyance of real property had to include words of inheritance for the grantor to pass on, or to retain part of, a fee-simple absolute interest in the land. *See* G.C. 8510-1, 86 Ohio Laws 18 (1925). If the deed did not include words of inheritance, then the grantee received, or the grantor retained, only a life estate in the land. The common-law courts therefore recognized a distinction between a reservation of a property interest and an exception to the conveyance of property. A reservation created a new property right for the grantor, and because that new interest had not been owned by the grantor in fee simple absolute before the conveyance, words of inheritance were required to make it inheritable. In contrast, an exception to the conveyance withheld from the transfer an existing fee-simple property right owned by the grantor. Because property owned in fee simple absolute was already inheritable, the grantor did not have to include words of inheritance to retain more than a life estate in the excepted interest.

**{¶ 3}** This case involves two separate deeds to property in which successive grantors, W.T. Fleahman and Mary Fleahman, conveyed the surface rights and part of the mineral interest while retaining part of the oil and gas rights. Both deeds were executed before 1925, and neither deed contained words of inheritance. The Stark County Court of Common Pleas and the Fifth District both concluded that the conveyances created reservations of the oil and gas rights that retained life estates in those rights expiring on the respective deaths of the grantors. 2020-Ohio-3042, 154 N.E.3d 644, ¶ 17, 40. For this reason, the court of appeals affirmed summary judgments entered in favor of appellees, Peppertree Farms, L.L.C., and Jay and Amy Moore, quieting title to the oil and gas rights claimed by appellants Richard Reinholtz, Sylvia Ann Miller, and KOAG, Inc. *Id.* The lower courts also concluded that Reinholtz's and Miller's interests—but not KOAG's—would have been extinguished by operation of the Marketable Title Act. *Id.* at ¶ 50-51, 56.

**{¶ 4}** After reviewing the language of the deeds at issue in this case, we conclude that both deeds contain exceptions to the conveyance that withheld part of the oil and gas rights from the transfer of property. In both deeds, the oil and gas rights were in existence and owned by the respective grantors at the time of conveyance. The grantors therefore held a fee-simple interest that was inheritable. For this reason, words of inheritance were not required to retain more than a life estate in the excepted interests in the oil and gas. Consequently, Mary Fleahman's death did not terminate the interests claimed by Reinholtz and Miller, and W.T. Fleahman's death did not terminate the interest claimed by KOAG.

**{¶ 5}** Regarding the second issue—whether Ohio's Dormant Mineral Act supersedes Ohio's Marketable Title Act and provides the exclusive mechanism for reuniting a surface estate with its severed mineral interest—Reinholtz, Miller, and KOAG argue that oil and gas interests cannot be extinguished by operation of the Marketable Title Act. This court rejected that position in *West v. Bode*, 162 Ohio St.3d 293, 2020-Ohio-5473, 165 N.E.3d 298, ¶ 2. The *West* court held that the

3

Dormant Mineral Act and the Marketable Title Act provide alternative, independent mechanisms to reunite a surface estate with its severed mineral interest. No other arguments have been presented challenging the lower courts' determinations that the Marketable Title Act extinguished the interests claimed by Reinholtz and Miller. However, the trial court did not find that the Marketable Title Act extinguished the interest that KOAG claims, so summary judgment against KOAG was erroneous.

{¶ 6} We therefore affirm the judgment of the court of appeals as it applies to the claims of Reinholtz and Miller, reverse the judgment of the court of appeals as it pertains to KOAG, and remand this matter to the trial court for further proceedings consistent with this opinion.

**Facts and Procedural History**

{¶ 7} In April 1916, W.T. and Katherine Fleahman conveyed two tracts of land in Monroe County to W.A. Gillespie. The first tract contained approximately 80 acres and the second tract contained approximately 5 acres. The deed stated, "Grantor W.T. Fleahman excepts and reserves from this deed the one half of the royalty of the oil and gas under the above described real estate."

{¶ 8} Although the transfer is not documented in the record before this court, it is not disputed that Mary Fleahman acquired W.A. Gillespie's interest through a subsequent conveyance. In a deed executed in September 1920 and recorded in April 1921, Mary Fleahman conveyed the two tracts of land to H.J. Jones. The deed stated that "the 3/4 of oil Royalty and one half of the gas is hereby reserved and is not made a part of this transfer." In a deed recorded on October 5, 1929, Mary Fleahman transferred three-fourths of her rights to the oil and gas to W.T. Fleahman. The parties call the interest that she retained the "Mary Fleahman Interest," as we do herein, and part of it is claimed by Reinholtz and Miller.

{¶ 9} In a deed recorded on October 11, 1929, W.T. Fleahman transferred to S.E. Headley "the one fourth (1/4) part of his royalty of all oil and gas in and

under the * * * premises." What the parties and this court herein call the "W.T. Fleahman Interest" is the interest that was retained by W.T. Fleahman in April 1916, plus the interest he received from Mary Fleahman under the deed recorded on October 5, 1929, and minus the interest that he conveyed to S.E. Headley a week later.

{¶ 10} Opal Thonen, the administrator of the estate of W.T. Fleahman, sold the W.T. Fleahman Interest to T.J. Kremer Jr. in a conveyance recorded in January 1938. Kremer Jr. then transferred by quit-claim deed an "undivided one-fourth of the oil royalty and one-eighth of the gas royalty" to his father, T.J. Kremer, in February 1939. The deed, which was recorded in August 1948, stated that it was "the intention of the parties to this conveyance to convey to the purchaser the one-half of such interest as Grantor acquired by deed from Opal Thonen." The parties call this one-half share of the W.T. Fleahman Interest the "T.J. Kremer Interest," as we do herein. It is claimed by KOAG.

{¶ 11} Peppertree Farms owns 78.668 acres and Jay and Amy Moore own an additional 5.009 acres of the land that was previously owned by W.T. Fleahman and Mary Fleahman.

{¶ 12} Peppertree Farms brought this action to quiet title in the Stark County Common Pleas Court against Reinholtz, Miller, and KOAG, among numerous other defendants. Relevant here, it sought a declaration that the W.T. Fleahman and Mary Fleahman Interests were only life estates, which if true would have precluded the subsequent transfer of the T.J. Kremer Interest. It further sought a declaration that these interests were extinguished by the Marketable Title Act. Jay and Amy Moore were added as plaintiffs. Reinholtz, Miller, and KOAG filed counterclaims to quiet title in their favor and for a declaratory judgment that the W.T. Fleahman, Mary Fleahman, and T.J. Kremer Interests had not expired.

{¶ 13} The trial court entered summary judgment in favor of Peppertree Farms and Jay and Amy Moore, finding that the W.T. Fleahman and Mary

Fleahman Interests were reservations and therefore life estates because the conveyances did not include words of inheritance. It concluded that the Dormant Mineral Act did not supersede the Marketable Title Act and that the W.T. Fleahman and Mary Fleahman Interests (but not the T.J. Kremer Interest) would have been extinguished by the Marketable Title Act if they had not expired upon the deaths of W.T. Fleahman and Mary Fleahman.

{¶ 14} The Fifth District Court of Appeals affirmed, holding that the W.T. Fleahman and Mary Fleahman Interests each created new property rights and therefore were reservations. 2020-Ohio-3042, 154 N.E.3d 644, at ¶ 40. And because the conveyances did not include words of inheritance, W.T. Fleahman and Mary Fleahman had reserved only life estates that expired on their respective deaths. *Id.* The appellate court held that the Dormant Mineral Act did not supersede the Marketable Title Act, *id.* at ¶ 45-46, and it determined that the W.T. Fleahman and Mary Fleahman Interests were extinguished by the Marketable Title Act, *id.* at ¶ 55-56.

{¶ 15} We accepted the discretionary appeal of Reinholtz, Miller, and KOAG to consider two propositions of law:

1. As a matter of law, prior to 1925 and thereafter, an oil and gas severance using the words "excepts and reserves" or "reserved and is not made part of this transfer" in an instrument conveying real property is the retention of an existing interest, not the creation of a new property interest.

2. The Ohio Dormant Mineral Act (O.R.C. 5301.56) supersedes and controls over the Ohio Marketable Title Act (O.R.C. 5301.47, et seq.).

*See* 160 Ohio St.3d 1407, 2020-Ohio-4574, 153 N.E.3d 104; 160 Ohio St.3d 1462, 2020-Ohio-5332, 157 N.E.3d 798.

### Law and Analysis

{¶ 16} "[U]nder the feudal system, land being granted by the lord as strictly in compensation for personal services, the grant was for no longer than the life of the grantee. Later the grant was extended to the sons and other issue of the grantee, under the designation of 'heirs,' they being entitled to stand in the place of their ancestor after his death, if mentioned in the grant, but only then." 1 Tiffany, *Real Property*, Section 28 (3d Ed.1939). This was the basis of the common-law rule that to pass land in fee simple rather than convey only a life estate, a deed had to state that the estate transferred was absolute by including words of inheritance. *Id.* at Sections 28 and 50; 1 Kuntz, *A Treatise on the Law of Oil and Gas*, Section 14.2 (2021).

{¶ 17} Additional considerations arose when the grantor sought to retain an interest in the property being conveyed to the grantee. The common law recognized a distinction between reservations and exceptions. 1 Kuntz, *A Treatise on the Law of Oil and Gas*, Section 14.2. A reservation was created in a conveyance when "an estate [was] granted and at the same time some new right or privilege [was] reserved out of it to the grantor." *Gill v. Fletcher*, 74 Ohio St. 295, 304, 78 N.E. 433 (1906). For example, a right to revoke the deed or to repurchase the property has been treated as a reservation. 4 Tiffany, *Real Property*, Section 972. "[I]f the grantor makes reservations in his deed of conveyance, words of inheritance must be used in order to pass [or retain] a fee-simple estate." *Embleton v. McMechen*, 110 Ohio St. 18, 25, 143 N.E. 177 (1924). *Accord* 1 Kuntz, *A Treatise on the Law of Oil and Gas*, Section 14.2. Because the conveyance established a new property right binding the grantee that the grantor did not already own in fee simple absolute, the ability to inherit that right also had to be created by the conveyance. *See* 4 Tiffany, *Real Property*, Sections 876 and 972.

**{¶ 18}** On the other hand, "[t]he purpose and effect of an exception in a conveyance is to except or exclude from the operation of the conveyance some part of the thing or things covered by the general words of description therein, as when one conveys a piece of land, excepting a certain part thereof, or the houses thereon, it being properly always a thing actually existent." 4 Tiffany, *Real Property*, Section 972. "Coal, oil, timber, gas, and minerals are all corporeal things already in existence; thus, they squarely meet the requirements to be an exception, rather than a reservation." *Id.* If the "conveyance create[d] an exception to the grant, leaving in the grantor and his heirs a fee-simple estate," *Gill* at paragraph two of the syllabus, words of inheritance were not necessary to retain more than a life estate, *id.* at 304.

**{¶ 19}** "Whether the language used in a deed creates a reservation or exception from the grant depends upon the intention of the parties as evinced by a construction of the whole instrument in the light of the circumstances of each case." *Id.* at paragraph one of the syllabus. Therefore, we have explained that the use of the word "reserve" or the word "except" or the use of both words in the same deed provision is not determinative of whether a reservation was created or an exception was made to the conveyance. *Id.* at 304; *Sloan v. Lawrence Furnace Co.*, 29 Ohio St. 568, 569 (1876).

**{¶ 20}** For example, in *Gill*, the conveyance at issue used both the words "reserve" and "except," but because the mineral retained was already in existence and the grantor saved it to himself, we determined that the deed contained an exception, not a reservation. 74 Ohio St. at 303-304, 78 N.E. 433. Similarly, in *Sloan*, although the deed at issue used the word "reserving," we concluded "that 'reserving' was [t]here used in the sense of 'excepting.' The 'minerals underlying the soil' being a part of the land described in the deed, and not a mere future benefit or interest therein, there can be no doubt the grantor intended to retain the fee-simple title to the minerals." *Id.* at 569.

8

**{¶ 21}** Effective March 25, 1925, the General Assembly enacted G.C. 8510-1, 86 Ohio Laws 18 (1925), to abrogate the common-law requirement of words of inheritance to pass on a fee-simple estate. That provision, now codified at R.C. 5301.02, states:

> The use of terms of inheritance or succession are not necessary to create a fee simple estate, and every grant, conveyance, or mortgage of lands, tenements, or hereditaments shall convey or mortgage the entire interest which the grantor could lawfully grant, convey, or mortgage, unless it clearly appears by the deed, mortgage, or instrument that the grantor intended to convey or mortgage a less estate.

For this reason, the distinction between a reservation and an exception no longer carries the same historical importance in Ohio that it did prior to 1925. *See* 1 Kuntz, *A Treatise on the Law of Oil and Gas*, Section 14.2.

**{¶ 22}** However, because the W.T. Fleahman and Mary Fleahman Interests predate the enactment of the statute, we apply the common law to determine whether each transaction retained for the grantors only a life estate in the oil and gas interests. That determination turns on whether the conveyance created a reservation of the oil and gas rights or excepted them from the transfer of property.

**{¶ 23}** W.T. and Katherine Fleahman's deed stated, "Grantor W.T. Fleahman excepts and reserves from this deed the one half of the royalty of the oil and gas under the above described real estate." The oil and gas was already in existence at the time of the conveyance, and W.T. and Katherine Fleahman had a fee-simple property interest in it that they could except from the transfer of real estate. Words of inheritance were not required to make that property interest inheritable.

**{¶ 24}** The deed from Mary Fleahman transferring land to H.J. Jones more expressly excepted part of the oil and gas interest from the conveyance, stating that "the 3/4 of oil Royalty and one half of the gas is hereby reserved and is not made a part of this transfer." Again, the conveyance did not create this interest, because the oil and gas was in existence and owned in fee simple before the deed was executed.

**{¶ 25}** Peppertree Farms and Jay and Amy Moore maintain that W.T. Fleahman and Mary Fleahman retained an interest only in oil and gas royalties. They assert that a royalty is personal property and that the deeds therefore created new rights that could be inheritable only if the conveyances contained words of inheritance. Professor Eugene Kuntz, the author of a renowned treatise on the law of oil and gas, has noted that the word "royalty" has been used "loosely," including in the broad sense of referring to the mineral interest itself. 1 Kuntz, *A Treatise on the Law of Oil and Gas*, Section 15.4. However, dicta in this court's decision in *Pure Oil Co. v. Kindall* supports their position: "Royalty is a certain percentage of the oil after it is found or produced, or so much per gas well developed and producing gas. Royalty is personal property, and is not realty." 116 Ohio St. 188, 201, 156 N.E. 119 (1927). But as we noted in *Pure Oil Co.*, that issue did not appear to be properly before this court in that case because the appellants had failed to perfect the record on appeal. *Id.* at 198-199. Further, the conveyance at issue contained words of inheritance, *see id.* at 191, so the difference between a reservation and an exception was of no consequence to our analysis in that case.

**{¶ 26}** However, there is a recognized difference between royalties that have accrued, which are personal property, and the right to unaccrued royalties, which is real property. *See, e.g.*, *United States v. Noble*, 237 U.S. 74, 80, 35 S.Ct. 532, 59 L.Ed. 844 (1915); *Sehlstrom v. Sehlstrom*, 925 N.W.2d 233, 238 (Minn.2019); *Siana Oil & Gas Co., L.L.C. v. Dublin Co.*, 2018 ND 164, 915 N.W.2d 134, ¶ 19; *Weber v. Mobil Oil Corp.*, 2010 OK 33, 243 P.3d 1, ¶ 19, fn. 25;

10

*Nygaard v. Getty Oil Co*., 918 So.2d 1237, 1240, ¶ 14 (Miss.2005); *Ferguson v. Coronado Oil Co*., 884 P.2d 971, 977 (Wyo.1994); *Price v. Atlantic Refining Co*., 79 N.M. 629, 1968-NMSC-180, 447 P.2d 509, ¶ 4; *Krone v. Lacy*, 168 Neb. 792, 800, 97 N.W.2d 528 (1959); *Mark v. Bradford*, 315 Mich. 50, 58, 23 N.W.2d 201 (1946); *Callahan v. Martin*, 3 Cal.2d 110, 124, 43 P.2d 788 (1935); *Arrington v. United Royalty Co*., 188 Ark. 270, 65 S.W.2d 36 (1933).

**{¶ 27}** As Professor Kuntz explained in his treatise on oil and gas, "it is generally recognized that unaccrued royalty is properly classified as real property, and the right to receive unaccrued royalty has been so classified for a wide variety of purposes." 3 Kuntz, *A Treatise on the Law of Oil and Gas*, Section 38.2 (2021). This is because "[t]he right to receive royalty in the future is one of the separately alienable incidents of ownership of the full mineral interest." *Id.* "[E]ven before an oil and gas lease has been executed describing the payments to be made under the lease and describing other rights of the lessor, it is recognized that the owner of a full mineral interest has distinct incidents of ownership with respect to future leases, and that he may alienate such incidents or property rights in whole or in part." 1 Kuntz, *A Treatise on the Law of Oil and Gas*, Section 15.1. Therefore, the right to future royalties may be retained by exception. *See* 1 Williams & Meyers, *Oil and Gas Law*, Section 202.3 (2021); 1 Kuntz, *A Treatise on the Law of Oil and Gas*, Section 15.1.

**{¶ 28}** Consequently, at the times that W.T. Fleahman and Mary Fleahman each conveyed the property, they owned an existing real-property interest in unaccrued royalties from the production of oil and gas, regardless of whether the property was then subject to an oil and gas lease. They could sever their present right to future royalties from both the surface and the mineral estate, which they did. And because they did so by excepting the royalty interest from the conveyance, their property rights in the partial interest to the oil and gas were absolute.

**{¶ 29}** For these reasons, the W.T. Fleahman and Mary Fleahman Interests were not life estates and did not terminate on their respective deaths. And because the W.T. Fleahman Interest was not a life estate, the T.J. Kremer Interest could be acquired after W.T. Fleahman had died. The court of appeal's conclusion to the contrary was in error.

**{¶ 30}** However, the trial court and the appellate court also decided that the W.T. Fleahman and Mary Fleahman Interests would have been extinguished by the Marketable Title Act. Reinholtz, Miller, and KOAG challenge this determination, asserting that the Dormant Mineral Act is the exclusive mechanism for reuniting a surface estate with its severed mineral interest. However, as they recognize, this argument is precluded by this court's recent decision in *West*, in which we held that the Marketable Title Act and the Dormant Mineral Act provide "independent, alternative statutory mechanisms that may be used to reunite severed mineral interests with the surface property subject to those interests." 162 Ohio St.3d 293, 2020-Ohio-5473, 165 N.E.3d 298, at ¶ 2. And because they present no other argument explaining why the Marketable Title Act did not extinguish the W.T. Fleahman and Mary Fleahman Interests, we do not disturb the trial court's summary judgment entered against Reinholtz and Miller.

**{¶ 31}** But the trial court did not determine that the Marketable Title Act had extinguished the T.J. Kremer Interest. And because the W.T. Fleahman Interest was not a life estate that had expired before the T.J. Kremer Interest was acquired, the trial court erred in granting summary judgment against KOAG and in favor of Peppertree Farms and Jay and Amy Moore.

**Conclusion**

**{¶ 32}** Prior to March 25, 1925, when a conveyance created new property rights benefiting the grantor in the transaction, it contained a reservation and words of inheritance were required to make those new rights inheritable. In contrast, when the transaction withheld preexisting property rights from the conveyance, those

12

words were an exception to the conveyance and words of inheritance were not required to retain more than a life estate in the excepted property interest.

{¶ 33} In this case, the deeds that W.T. Fleahman and Mary Fleahman executed excepted from the conveyances part of the oil and gas interests that they owned. Therefore, the oil and gas rights that Reinholtz, Miller, and KOAG claim did not terminate upon W.T. Fleahman's and Mary Fleahman's deaths. However, the court of appeals below upheld the trial court's determination that Reinholtz's and Miller's interests were terminated by the Marketable Title Act. Based on our precedent, we leave that holding in place. Further, because the court of appeals erred in concluding that W.T. Fleahman's oil and gas rights terminated upon his death, it erred in concluding that KOAG could have no interest in those rights. Summary judgment in favor of Peppertree Farms and Jay and Amy Moore on their claims against KOAG and on KOAG's counterclaims was erroneous.

{¶ 34} For these reasons, we affirm the judgment of the court of appeals as it applies to the claims of Reinholtz and Miller, reverse the judgment of the court of appeals as it pertains to KOAG, and remand this matter to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part

and reversed in part,

and cause remanded.

O'CONNOR, C.J., and DEWINE, STEWART, and BRUNNER, JJ., concur.

DONNELLY, J., dissents, with an opinion joined by FISCHER, J.

_____

**DONNELLY, J., dissenting.**

{¶ 35} This case should be dismissed as having been improvidently allowed. It does not involve issues of "public or great general interest." Article IV, Section 2(B)(2)(e), Ohio Constitution. It is highly fact-specific and the issues involved were resolved below. I dissent.

FISCHER, J., concurs in the foregoing opinion.

––––––––––––––––

Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Matthew W. Onest, and Wayne A. Boyer, for appellees.

Hanlon, Estadt, McCormick & Schramm Co., L.P.A., Erik A. Schramm Jr., and Kyle W. Bickford, for appellants.

Emens, Wolper, Jacobs & Jasin Law Firm Co., L.P.A., Cody Smith, and Sean E. Jacobs, urging affirmance for amici curiae, Gregory A. Goble and Brenda S. Goble.

––––––––––––––––